In re: **Clarence Milton Staton, Jr.**        Case No. 18-32776-KRH
     **Salina Ann Willis**                  Chapter 13
     **AKA Clarence M. Staton, Jr.**

     **Debtors**

Address:   1615 Bickerstaff Road
             Henrico, VA 23231

Last four digits of Social Security No(s):    xxx-xx-2454 (Debtor)
                                             xxx-xx-4763 (Joint Debtor)

---

## NOTICE OF APPLICATION FOR APPROVAL OF DEBTOR'S COUNSEL'S <u>COMPENSATION, AND NOTICE OF HEARING</u>

      Clarence M. Staton, Jr. and Salina Ann Willis (the "Debtors"), by counsel, have filed papers with the Court requesting approval of compensation (the "Application") for legal services rendered (including expenses) in the amount of $6,000.00 to be paid from the settlement of Salina Ann Willis's claim against Symmetry Management Corp., d/b/a BCC Financial Management Services, Inc. for violations of the Fair Debt Collection Practices Act.

      A copy of the Application, together with applicable exhibits, may be obtained from the Debtors' counsel or through the Court's PACER system.

      <u>**Your rights may be affected.**</u>**  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

      If you do not want the Court to grant the relief sought in the Application or if you want the Court to consider your views on the Application, then on or before **seven (7) days prior to the days of the scheduled hearing**, you or your attorney must:

      ☒      File with the Court, at the address shown below, a written response and supporting memorandum pursuant to Local Bankruptcy Rule 9013-1(H).  If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

| | |
|---|---|
| Mark C. Leffler (VSB #40712) | Dale W. Pittman (VSB #15673) |
| Boleman Law Firm, P.C. | THE LAW OFFICE OF DALE W. PITTMAN, P.C. |
| P.O. Box 11588 | The Eliza Spotswood House |
| Richmond, VA  23230 | 112-A West Tabb Street |
| Telephone (804) 358-9900 | Petersburg, VA 23803 |
| Counsel for Debtors and Special | Telephone (804) 861-6000 |
|   Counsel for Salina Ann Willis | Special Counsel for Salina Ann Willis |

Clerk of Court
United States Bankruptcy Court
701 East Broad Street, Suite 4000
Richmond, VA 23219

☒       Mail a copy of your response and supporting memorandum to:

Mark C. Leffler, Esquire
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230

And also to

Dale W. Pittman, Esquire
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803

You or your attorney also must:

☒       Attend a hearing on the motion scheduled to be held on **May 29, 2019, at 12:00 p.m.** at the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, 701 East Broad Street, Room 5000, Richmond, Virginia 23219.

If you or your attorney do not take these steps, including the filing and serving of a written response and supporting memorandum within the time period and in the manner set forth above pursuant to Local Bankruptcy Rule 9013-1, the Court may deem any opposition waived, treat the Application as conceded, decide that you do not oppose the Application, and issue an order granting the relief requested without further notice or hearing.

Respectfully submitted,

CLARENCE MILTON STATON, JR.
SALINA ANN WILLIS
By Counsel:


 /s/ Mark C. Leffler
Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230
Telephone (804) 358-9900
Counsel for the Debtors and Special Counsel for
Salina Ann Willis


 /s/ Dale W. Pittman
Dale W. Pittman (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone (804) 861-6000
Special Counsel for Debtor

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2019, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by first-class U.S. mail to the Debtor, Chapter 13 trustee, the United States trustee if other than by the electronic means provided for at Local Bankruptcy Rule 2002-1, and to all creditors and parties in interest on the mailing matrix attached hereto.


/s/ Mark C. Leffler
Counsel for the Debtors and
Special Counsel for Salina Ann Willis

Label Matrix for local noticing
0422-3
Case 18-32776-KRH
Eastern District of Virginia
Richmond
Tue Apr 30 14:19:18 EDT 2019

Exeter Finance LLC, c/o AIS Portfolio Servic
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

VHDA
601 S Belvidere Street
Richmond, Va 23220-6504

United States Bankruptcy Court
701 East Broad Street
Richmond, VA 23219-1888

ADT Security
RE: Bankruptcy
PO Box 650485
Dallas, TX 75265-0485

American Medical Collection Ag
Re: Lab Corp of America
2269 S. Saw Mill River Rd #3
Elmsford, NY 10523-3848

Ashley Funding Services, LLC its successors
assigns as assignee of Laboratory
Corporation of America Holdings
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

BCC Financial Mgt Svs Inc.
3230 W. Commercial Blvd
Suite 2
Fort Lauderdale, FL 33309-3400

Bon Secours
PO Box 1123
Minneapolis MN 55440-1123

Bon Secours Medical Group
7229 A Forest Avenue
Suite 112
Richmond, VA 23226-0000

COUNTY OF HENRICO, VIRGINIA
ANDREW R. NEWBY, ASST. COUNTY ATTORNEY
P. O. BOX 90775
HENRICO, VIRGINIA 23273-0775

Citi Cards/Citibank
P.O. Box 6241
Sioux Falls, SD 57117-6241

Citibank, N.A.
Citibank, N.A.
701 East 60th Street North
Sioux Falls, SD 57104-0493

(p)COMCAST
676 ISLAND POND RD
MANCHESTER NH 03109-4840

Commonwealth Radiology
Re: Bankruptcy
1508 Willow Lawn Dr, Ste 117
Richmond, VA 23230-3421

Convergent Outsourcing
800 SW 39th Street
PO Box 9004
Renton, WA 98057-9004

County of Henrico
Treasury Division
P.O. Box 90775
Henrico, VA 23273-0775

Debt Rehab LLC
5000 Birch Street
West Tower, Suite 3000
Newport Beach, CA 92660-2140

Emergency Medical Associates
Attn: Bankruptcy Dept.
PO Box 5508
Virginia Beach, VA 23471-0508

Exeter Finance Corp
PO Box 166097
Irving, TX 75016-6097

Exeter Finance LLC
AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Exeter Finance LLC c/o AIS Portfolio Service
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(p)FOCUSED RECOVERY SOLUTIONS
9701 METROPOLITAN COURT
STE B
RICHMOND VA 23236-3690

Granite Asset Management
P.O. Box 10555
Greenville, SC 29603-0000

Granite State MGMT-DIR
P.O. Box 3420
Concord, NH 03302-3420

Granite State Management & Resources
P.O. Box 3420
Concord, NH 03302-3420

HSN
1 HSN Drive
Saint Petersburg, FL 33729-0001

Hill & Rainey
Re: Whittle & Roper Inc., Real
2425 Boulevard, Ste 9
Colonial Heights, VA 23834-2324

LCA Collections
Re: LabCorp
1250 Chapel Hill Road
Burlington, NC 27215-7141

LVNV Funding, LLC its successors and assigns
assignee of CONSUMER LOAN UNDERLYING
BOND (CLUB) GRANTOR TRUST
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Labcorp
Re: Bankruptcy Dept.
PO Box 2240
Burlington, NC 27216-2240

Langley Federal Credit Union
Attn: Accounts Control
P O Box 120128
Newport News VA 23612-0128

Langley Federal Credit Union
Re: Bankruptcy
P.O. 7463
Hampton, VA 23666-0463

Lending Club Corporation
71 Stevenson
Suite 300
San Francisco, CA 94105-2985

Lendmark Financial Services
2118 Usher St.
Suite 200
Conyers, GA 30094-0000

Memorial Regional Medical Cent
RE: Bankruptcy
P.O. Box 409601
Atlanta, GA 30384-9601

Midnight Velvet
Attn: Bankruptcy Department
1112 7th Avenue, Box 2816
Monroe, WI 53566-1364

Midnight Velvet
c/o Creditors Bankruptcy Service
P O Box 800849
Dallas, TX 75380-0849

Miramed Revenue Group
Re: Bon Secours
991 Oak Creek Drive
Lombard, IL 60148-6408

NWFCU
P.O. Box 466
Herndon, VA 20172-0466

Nathaniel A. Scaggs, Esq
2425 Boulevard, Suite 9
Colonial Heights, VA 23834-2324

Neurology Clinic At Memorial
Regional
PO Box 14000
Belfast, ME 04915-4033

NorthWest Credit Union
NWFCU
P.O. Box 466
Herndon, VA 20172-0466

Northwest Federal Credit Union
PO Box 1229
Herndon, VA 20172-1229

One Hampton Medical Group
13700 St. Francis Blvd.
Midlothian, VA 23114-3222

Pediatric Center-VCC
Re: Bankruptcy
10571 Telegraph Rd., Ste. 110
Glen Allen, VA 23059-4652

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Quantum3 Group LLC as agent for
CF Medical LLC
PO Box 788
Kirkland, WA 98083-0788

Richmond Card Assoc.
Attn#18117J
P.O. Box 14000
Belfast, ME 04915-4033

Richmond Community Hospital
Attn: Bankruptcy Department
P.O. Box 27184
Richmond, VA 23261-7184

SYNCB/JCPennys
PO Box 965007
Orlando, FL 32896-5007

SYNCB/Marshalls
P.O. Box 965005
Orlando, FL 32896-5005

SYNCB/Rooms To Go
PO Box 965036
Orlando, FL 32896-5036

Safe Home Security
1125 Middle St.
#201
Middletown, CT 06457-1686

Southwest Credit Systems
4120 International Pkwy
Suite 1100
Carrollton, TX 75007-1958

St. Mary's Hospital
Attn: Bankruptcy Dept
P.O. Box 100767
Atlanta, GA 30384-0767

Synchrony Bank
Recovery Management
25 SE 2nd Ave., Suite 1120
Miami, FL 33131-1605

The Home Depot/CBNA
P.O. Box 6497
Sioux Falls, SD 57117-6497

U.S. Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219-4625

US Department of Education
Direct Loan Servicing Center
PO Box 105028
Atlanta, GA 30348-5028

VA Housing Development
P.O. Box 4549
Richmond, VA 23220-8549

VHDA
PO BOX 4627
RICHMOND, VA 23220-8627

Vector Security
Re: Bankruptcy
2805 North Parham Road #500
Richmond, VA 23294-4453

Verizon
by American InfoSource LP as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118-7901

(p)VIRGINIA UROLOGY
Attn: Bankruptcy Department
9101 Stony Point Drive
Richmond, VA 23235-1979

Clarence Milton Staton Jr.
1615 Bickerstaff Road
Henrico, VA 23231-4840

Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA 23803-3212

Emily Connor Kennedy
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

John P. Fitzgerald, III
Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219-1849

Laura Taylor Alridge
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Mark C. Leffler
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Salina Ann Willis
1615 Bickerstaff Road
Henrico, VA 23231-4840

Suzanne E. Wade
P.O. Box 1780
Richmond, VA 23218-1780

Veronica D. Brown-Moseley
Boleman Law Firm, P.C.
PO Box 11588
Richmond, VA 23230-1588

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Comcast
Attn: Bankruptcy Dept
PO Box 3012
Southeastern, PA 19398-3012

Focused Recovery Solutions
9701 Metropolitan Ct, Suite B
Richmond, VA 23236-3662

Portfolio Recovery Assoc., LLC
120 Corporate Boulevard
Suite 100
Norfolk, VA 23502-0000

Virginia Urology
Re: Bankruptcy
P.O. Box 79437
Baltimore, MD 21279-0437

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)VHDA
PO BOX 4627
Richmond, VA 23220-8627

End of Label Matrix
Mailable recipients    73
Bypassed recipients     1
Total                  74

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re: **Clarence Milton Staton, Jr.**                          **Case No. 18-32776-KRH**
       **Salina Ann Willis**                                          **Chapter 13**
       **AKA Clarence M. Staton, Jr.**

       **Debtors**

## APPLICATION BY DEBTORS' COUNSEL FOR APPROVAL OF COMPENSATION

Comes now Clarence M. Staton, Jr. and Salina Ann Willis (the "Debtors"), by counsel, and state the following in support of this Application for Approval of Attorney Compensation. For the reasons given below, the Debtors asks the Court to approve reasonable compensation (including expenses) in the amount of $6,000.00 for services rendered in prosecution of Salina Ann Willis's ("Ms. Willis") claim against under the Fair Debt Collection Practices Action ("FDCPA") against Symmetry Management Corp., d/b/a BCC Financial Management Services, Inc. ("BCC").

1.      On March 29, 2019, this Court entered an Order Granting Debtor's Application to Employ Counsel for Special Purpose and to Use Property of the Estate (the "Employment Order"). The Employment Order appointed Boleman Law Firm, P.C. ("Boleman") and the Law Office of Dale W. Pittman, P.C. ("Pittman"), as counsel for Ms. Willis for the special purpose of pursuing any remedies she possessed arising from her cause of action against BCC.

2.      As set forth in the Debtor's Motion to Employ Counsel for Special Purpose and to Use Property of the Estate, Ms. Willis had a cause of action against BCC, a debt collector, for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692 et seq., and

Mark C. Leffler (VSB #40712)                    Dale W. Pittman (VSB #15673)
Boleman Law Firm, P.C.                          THE LAW OFFICE OF DALE W. PITTMAN, P.C.
P.O. Box 11588                                  The Eliza Spotswood House
Richmond, VA 23230                              112-A West Tabb Street
Telephone (804) 358-9900                        Petersburg, VA 23803
Counsel for Debtors and Special                 Telephone (804) 861-6000
  Counsel for Salina Ann Willis                 Special Counsel for Salina Ann Willis

specifically 15 U.S.C. §§ 1692e and 1692g, which arose from a dunning letter BCC mailed Ms. Willis on or about April 2, 2018.

3.    On March 12, 2019, Boleman and Pittman, respectively, filed their Disclosures of Compensation of Proposed Special Counsel for Debtor (the "Disclosures of Compensation"). The Disclosures of Compensation set forth the terms of Boleman's and Pittman's compensation in exchange for agreeing to represent Ms. Willis in her cause of action against BCC:

> For legal services in this proposed representation, I have agreed to accept the Lodestar amount awarded by the court or other relevant adjudicating body or, if a settlement is achieved, the greater of 45% of the settlement (after reimbursement of expenses) or the Lodestar amount as determined by the court.

4.    The Disclosures of Compensation explained that the source of the proposed compensation was not the Debtors but, instead, was the Defendant in her action. Boleman and Pittman disclosed that they had agreed to share the compensation for legal services on a pro rata basis based upon their respective Lodestar amounts.

5.    At all times since the entry of the Employment Order, Ms. Willis was represented by Boleman and Pittman, who are competent to represent her interests against BCC.

6.    BCC's dunning letter stated that the consumer could notify the debt collector in writing *or by calling* in order to invoke the debt validation rights contained in 15 U.S.C. § 1692g(a)(4) and g(b). A consumer who does not make a *written* dispute within the thirty-day validation period loses the rights afforded by §§ 1692g(a)(4) and 1692g(b). Adding "or calling" to the § 1692g disclosure could cause the least sophisticated consumer to conclude that she can invoke her debt validation rights by calling the debt collector. In fact, a consumer may only invoke these debt validation rights by requesting in writing that the debt collector provide validation of the debt. 15 U.S.C. § 1692g(a)(4) and g(b).

7.     By adding "or calling" to the debt verification rights disclosures required to be made by § 1692g(a)(4) and g(b), when each subsection requires that the consumer make a dispute *in writing* in order to trigger the debt validation rights provided by these two subsections, BCC sought to discourage or prevent disputes that it would be required to respond to as a third-party debt collector, and, with respect to § 1692g(b), BCC sought to discourage or prevent being required to "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

8.     By adding "or calling" to the § 1692g(a)(4) and g(b) "in writing" requirement contained in the disclosures that a debt collector must make through the mandatory § 1692g debt validation process, BCC sought to eliminate any debt validation disputes beyond thirty days. A consumer who does not make a *written* dispute within the thirty-day validation period loses the rights afforded by §§ 1692g(a)(4) and 1692g(b).

9.     Pursuant to 15 U.S.C. § 1692k(a), violations of the FDCPA by a debt collector subject the debt collector to liability for actual damages and, in individual cases, statutory damages of up to $1,000.00.  Additionally, pursuant to § 1692k(a)(3), a successful action under the FDCPA by the plaintiff requires the defendant to pay "the costs of the action, together with a reasonable attorney's fee as determined by the court."

10.     On March 29, 2019, Ms. Willis filed a Complaint against BCC in the United States District Court for the Eastern District of Virginia (Civil Action No. 3:19cv220).

11.     On April 16, 2019, Ms. Willis and BCC reached a settlement in which BCC paid Ms. Willis $7,000.00 (inclusive of attorney fees) in exchange for a Release of All Claims.

Although litigation on the merits would surely have resulted in BCC being liable to Ms. Willis for much more in attorney fees, Boleman and Pittman agreed to reduce their fees and expenses to no more than $6,000.00 to facilitate settlement and insure that Ms. Willis received at least the $1,000.00 to which she would have likely been entitled in statutory damages under the FDCPA.

12.     Counsel for Ms. Willis worked together and with Ms. Willis to evaluate the value of the claim she had against BCC, taking into consideration the actions complained of with respect to the violation of the FDCPA.

13.     Ms. Willis approved of the terms of the settlement with BCC, including the net proceeds after payment of her attorneys' fees.

14.     The total attorney fees attributable to this case are set forth below:

Boleman Law Firm, P.C.     $ 4,607.50

Dale W. Pittman, Esq.     $ 4,625.00

15.     The total expenses attributable to this case are set forth below:

Boleman Law Firm, P.C.     $  63.00 Postage

Dale W. Pittman, Esq.     $ 400.00 Filing Fee
                          $    3.50 Photocopies
                          $    1.45 Postage
                          $  13.00 Process Service

16.     The Declarations of Mark C. Leffler and Dale W. Pittman, along with the supporting Exhibits and time and expense records, are attached to this Application and are incorporated by this reference.

17.     Because the Lodestar value of the attorneys' time exceeds 45% of the total settlement value, the attorneys request approval of their fees based upon the Lodestar value, less voluntary reductions made for the benefit of Ms. Willis.

18.     The attorneys have agreed to reduce their respective fees such that each law firm will receive a pro rata share of the $5,519.05 fee (after reimbursement of their respective expenses), or the amounts set forth below, which amounts are requested for approval:

Boleman Law Firm, P.C.        $2,754.00

Dale W. Pittman, Esq.         $2,765.05

18.     The undersigned counsel for Ms. Willis has reviewed the time records for the above-referenced attorneys and represents that the attorney time records support the respective fee requests.

19.     The undersigned counsel for Ms. Willis represents that the time records reflect the following amount of time expended on behalf of Ms. Willis and the following current hourly rates:

| Name | Hours | Current Hourly Rate | Amount |
|------|-------|---------------------|--------|
| Mark C. Leffler | 9.7 | $475.00 | $4,607.50 |
| Dale W. Pittman | 7.5 | $550.00 | $4,125.00 |
| Karen Graham, Paralegal | 2.5 | $200.00 | $   500.00 |

20.     The undersigned counsel for Ms. Willis represents that the time expended by each person set forth above was reasonable and that the time billed is reflective of appropriate billing judgment and, further, that the hourly rates are within a range approved by this Court for attorneys of similar experience and reputation.

21.     The undersigned counsel for Ms. Willis represents that Boleman and Pittman did not duplicate each others' work. However, the substantial discount of the fees requested more than compensates for any inefficiency.

22.     Counsel for Ms. Willis has incurred additional time and expense in assisting in the preparation of the instant pleading, which is necessary in order to present the Court with

information concerning the benefit of the settlement to Ms. Willis as well as information concerning the attorneys' fees.

## CONCLUSION

The Debtors respectfully request that the Court approve the fees requested above as reasonable compensation for Boleman's and Pittman's representation of Ms. Willis in her FDCPA claim against BCC and that the Court grant such other relief as is proper.

**Respectfully submitted,**
CLARENCE MILTON STATON, JR.
SALINA ANN WILLIS
By Counsel:

 /s/ Mark C. Leffler
Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230
Telephone (804) 358-9900
Counsel for the Debtors and Special Counsel for
Salina Ann Willis


 /s/ Dale W. Pittman
Dale W. Pittman (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone (804) 861-6000
Special Counsel for Debtor

## CERTIFICATE OF SERVICE

I certify that on April 30, 2019, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by first-class U.S. mail to the Debtor, Chapter 13 trustee, and to the United States trustee if other than by the electronic means provided for at Local Bankruptcy Rule 2002-1.


 /s/ Mark C. Leffler
Counsel for the Debtors and
Special Counsel for Salina Ann Willis

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Clarence Milton Staton, Jr.                    Case No. 18-32776-KRH
     Salina Ann Willis                                    Chapter 13
     AKA Clarence M. Staton, Jr.

     Debtors

## DECLARATION OF MARK C. LEFFLER

     Mark C. Leffler declares under penalty of perjury that the following statements are true:

    1.      I am over the age of 18 and have personal knowledge of the facts set forth herein.

    2.      I am a member in good standing of the bars of the following courts:

Supreme Court of the United States
Supreme Court of Virginia
U.S. Court of Appeals for the Fourth Circuit
U. S. District Court for the Eastern District of Virginia
U.S. Bankruptcy Court for the Eastern District of Virginia

    3.      I am a 1991 graduate of Eastern Mennonite College and a 1996 graduate of the Duquesne University School of Law in Pittsburgh, Pennsylvania. I have been licensed to practice law in Virginia since October 1996. I am a member of the Virginia State Bar, the National Association of Consumer Advocates, the National Association of Chapter 13 Trustees (NACTT) (Associate membership), and the Richmond Bankruptcy Bar Association. I am a member of the Board of Governors of the Virginia State Bar, Bankruptcy Section. I was the first debtor's attorney to be invited to join the Board of Directors of the NACTT Academy for Consumer Bankruptcy Education, of which I am currently the President. I also currently serve on the American Bankruptcy Institute's Commission on Consumer Bankruptcy, Chapter 7 Committee. I have previously served on the Virginia Bar Association Bankruptcy Section's Board of Directors, the Local Rules Committee for the U.S. Bankruptcy Court, Eastern District of Virginia, and the Richmond Bankruptcy Court Liaison Committee.

    4.      From July 12, 2000, until present, I have been employed by Boleman Law Firm, P.C., beginning in Richmond, Virginia, as an attorney. I am currently a shareholder, director, and Chief Legal Officer of the Boleman Law Firm, P.C. Since 2000, I have limited my work exclusively to the representation of consumers, with particular emphasis on representing consumer debtors in bankruptcy.

    5.      I am AV® rated by Martindale Hubbell, and I have been named a member of Virginia's "Legal Elite" in the bankruptcy practice category published by Virginia Business magazine on numerous occasions. In 2017, I was selected for inclusion in *The Best Lawyers in*

Mark C. Leffler (VSB #40712)
Boleman Law Firm, P.C.
2104 W. Laburnum Ave., Suite 201
Richmond, VA 23227
Telephone (804) 358-9900
Counsel for Debtors and Special Counsel
  for Salina Ann Willis

*America* in the category of Bankruptcy and Creditor Debtor Rights/Insolvency and Reorganization Law.

6.      I am a contributing author to the Virginia CLE publication, *Bankruptcy Practice in Virginia*.  I currently write a recurring column on bankruptcy law for the NACTT Academy for Consumer Bankruptcy Education's website at http://considerchapter13.org/. In July 2016, the Norton Bankruptcy Advisor published an article I authored. From 2010 through 2013, I was the Editor of the Virginia State Bar Bankruptcy Section's *Bankruptcy Law News*, and, from 2007 through 2009, I was the Case Summaries Editor for the *Bankruptcy Law News*. I have also written articles that have been published by the *Virginia Lawyer* magazine and the *Bankruptcy Law News*.

7.      I have given dozens of lectures to lawyers and professional groups on consumer law issues that qualified for continuing legal education credit, including:

| | | |
|---|---|---|
| Consumer Bankruptcy Cases: The Trustee's Perspective | Richmond Bankruptcy Bar Association | February 2002 |
| 2004 Caselaw Update: Virginia, Fourth Circuit, and U.S. Supreme Court | Tidewater Bankruptcy Bar Association Annual Seminar | December 2004 |
| Post-Confirmation Issues: Property of the Estate, Sales, Refinances, and Lien Avoidance | Virginia State Bar Bankruptcy Section Advanced Consumer Bankruptcy Practice Seminar | May 2005 |
| Oh, Won't You (362(c)) Stay Just a Little Bit Longer: BAPCPA, Multiple Filers, and the Disappearing Automatic Stay | Virginia State Bar Bankruptcy Section Advanced Consumer Bankruptcy Practice Seminar | May 2006 |
| Debtor Attorney Roundtable: Do I Still Have a Practice? Attorney's Fees, Debt Relief Agency Requirements, Credit Counseling, and the Debtors' Practice under BAPCPA | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2006 |
| Post-Confirmation Issues under BAPCPA | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2006 |
| Ethics Panel | Virginia State Bar Bankruptcy Section Advanced Consumer Bankruptcy Practice Seminar | May 2007 |

| | | |
|---|---|---|
| Chapter 13 Panel: 8 Things We Still Love About Chapter 13 … And 2 Things We Don't | Virginia Bar Association, Bankruptcy Section | May 2008 |
| Chapter 13 Disposable Income: Courts Where Form B22C Controls | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2009 |
| What Is a Successful Chapter 13 (Plenary) | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2010 |
| Chapter 13 Success Factors (Plenary) | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2010 |
| Post-Confirmation Issues in Chapter 13 | Virginia State Bar Bankruptcy Section | October 2010 |
| What Am I To Do About These Mortgage and Proof of Claim Issues? | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2011 |
| Mortgage Claims After December 1, 2011 | Richmond Bar Association, Bankruptcy Section | November 2011 |
| Both Sides of the Aisle:  An Examination of Current Chapter 11 and 13 Issues that Every Practitioner Should Consider | Virginia Bar Association, Bankruptcy Section | May 2012 |
| The Means Test Form Under Chapter 7 and Chapter 13 | Virginia State Bar, Bankruptcy Section Annual Seminar | March 2013 |
| Successful Outcomes in Consumer Bankruptcy | 2013 American Prepaid Legal Services Institute | May 2013 |
| "The Dirty Dozen: 12 Hot Topics in Chapter 13 Bankruptcy Practice" | Virginia CLE | May 2013 |
| You Talking To Me? Depositions and 2004 Examinations | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2013 |
| Successful Outcomes with a Bankruptcy | 2013 Annual Statewide Legal Aid Conference | October 2013 |

| | | |
|---|---|---|
| Model Chapter 13 Plan and Amendments to Federal Rules of Bankruptcy Procedure | Richmond Bar Association, Bankruptcy Section | January 2014 |
| Official Form Chapter 13 Plan and Proposed Rule Changes | Virginia Bar Association, Bankruptcy Section | May 2014 |
| Disposable income panel: Collisions at the intersection of disposable income & good faith | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2014 |
| Bankruptcy Panel: What Every Creditor's Lawyer Needs to Know | Virginia Creditors' Bar Association Annual Seminar | October 2014 |
| Everything a Bankruptcy Lawyer Should Know About Personal Injury Claims and Disability Law | Virginia State Bar, Bankruptcy Section Annual Seminar | March 2015 |
| Ethical Issues Regarding Limited-Scope Representation and Withdrawal from Representation in Bankruptcy Cases | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2015 |
| Break-Out Session for Consumer Practitioners: Post-Confirmation Issues in Chapter 13 Cases | Annual Mid-Atlantic Institute on Bankruptcy and Reorganization Practice | September 2015 |
| Dismissal and Conversion Issues | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2016 |
| Mortgage Issues Toolbox | Southeastern Bankruptcy Law Institute | March 2017 |
| Dealing With a Worst-Case Scenario: A Discharge Roundtable | Southeastern Bankruptcy Law Institute | March 2017 |
| Direct Payments by Debtors vs. Conduit Payments:  Discharge and Other Issues Presented by Who Payor Is | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2017 |

| Post-Judgment: Best Practices and Recent Developments | Richmond Bar Association Bench-Bar Conference | October 2017 |
|---|---|---|
| Consumer Protection Litigation and Bankruptcy: Intersections and Collisions | Richmond Bar Association | October 2017 |
| The Claim Before the Storm: Remedies When Proof of Claim Compliance Fails | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2018 |
| FDCPA Violations Arising from Filing a Proof of Claim in Bankruptcy: What does *Midland v. Johnson* Mean? | 27th Annual Consumer Rights Litigation Conference | October 2018 |
| Pursuing and Defending Class Actions in Bankruptcy Court | National Association of Chapter Thirteen Trustees (NACTT) Annual Seminar | July 2019 |

8.     I have am currently counsel of record in over 1,000 active bankruptcy cases in the Richmond, Newport News, and Norfolk Divisions of the Eastern District of Virginia. I have handled alone or co-counseled with others the following cases that resulted in opinions: *Tidewater Finance Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008); *In re Freeman*, 297 B.R. 41 (Bankr.E.D.Va. 2002); In *re Schechter*, 2012 WL 3555414 (Bankr.E.D.Va. 2012); *In re Sheets*, 2014 WL 4831339 (Bankr.E.D.Va. 2014); *In re Lavigne*, 2007 WL 3469454 (Bankr.E.D.Va. 2007), affirmed in part and reversed in part sub nomme *GMAC v. Horne*, 390 B.R. 191 (E.D.Va. 2008); *In re Swain*, 509 B.R. 22 (Bankr.E.D.Va. 2014); *In re Foster*, 556 B.R. 233 (Bankr.E.D.Va. 2016); *In re Maddux* v. Midland Credit Management, Inc., 567 B.R. 489 (Bankr.E.D.Va. 2016); *Charity et al v. NC Financial Solutions of Utah, LLC, d/b/a NetCredit*, 2017 WL 3580173 (Bankr.E.D.Va. 2017); *Taylor v. Allied Title Lending, d/b/a Allied Cash Advance et al. (In re Taylor)*, 2019 WL 103775 (Bankr.E.D.Va. 2019); and *Derby v. Portfolio Recovery Associates, LLC*, 2019 WL 1423084 (Bankr. E.D.Va. 2019).

9.     My 2017 hourly rate of $435.00 was determined on May 7, 2018 to be a reasonable hourly rate by Hon. F. Bradford Stillman (Ret.), who was acting as an arbitrator on the subject of determining attorney fees payable in the adversary proceeding in this Court that was styled as *Burnetta Michelle Jones v. CNU of Kansas, LLC, dba CashNet USA*, Adv. No. 16-03272-KLP.  The Award in Arbitration is attached as an Exhibit to the Fee Application in this case and incorporated by this reference.  On June 15, 2018, this Court approved the Award in Arbitration and entered an Order Granting Application by Counsel for Debtors for Approval of Compensation in the Chapter 13 case of *Burnetta Michelle Jones*, Eastern District of Virginia, Richmond Division, Case No. 16-33496-KLP, at Dkt. No. 35.

10.     I have thus far devoted 9.7 hours to the representation of Salina Ann Willis in her cause of action against Symmetry Management Corp., d/b/a BCC Financial Management Services, Inc. ("BCC").  I have applied my 2019 hourly rate in this engagement, which is $475.00.  At my applicable hourly rates throughout this case, the total lodestar value of my time in this case is $4,607.50.

11. Costs associated with this case incurred by my firm total $63.00. Fees plus costs total $4,670.50. An itemization of my firm's costs is attached to this Declaration.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

DATED: April 30, 2019.     /s/ Mark C. Leffler
                           Mark C. Leffler

## Boleman Law Firm, P.C.

| When | Who | Hrs | Rate | L/A | Fee | Description of services | Clarence Staton Jr. & Salina Willis |
|------|-----|-----|------|-----|-----|-------------------------|-------------------------------------|

**Other Litigation**

| When | Who | Hrs | Rate | L/A | Fee | Description of services |
|------|-----|-----|------|-----|-----|-------------------------|
| 3/5/2019 | MCL | 0.1 | 475 | L | 47.50 | Tc w/DWP re FDCPA claim (0.1) |
| 3/6/2019 | MCL | 0.9 | 475 | L | 427.50 | Tc w/client about FDCPA claim against BCC, discuss procedure for bringing claim while in bankruptcy, and terms of representation (0.4); draft Representation Agreement (0.2) and email to client recapping discussion (0.3). |
| 3/7/2019 | MCL | 0.2 | 475 | L | 95.00 | Email to DWP re representation of client in FDCPA matter, likely hearing date in Bk Ct, and SOL. |
| 3/11/2019 | MCL | 1.9 | 475 | L | 902.50 | Review Fed Bk Rules re notice periods for application to employ and motion to use property of the estate (0.2); draft Application to Employ and Motion to Use Estate Property (0.6), Motion to Shorten Notice Period (0.5), Motion for Expedited Hearing (0.3), and Statement of Attorney Compensation (0.2), email to DWP (0.1). |
| 3/12/2019 | MCL | 0.2 | 475 | L | 95.00 | Final review of pleadings, authorize filing. |
| 3/27/2019 | MCL | 0.2 | 475 | L | 95.00 | Draft proposed letter and forward to court for entry. |
| 3/27/2019 | MCL | 1.5 | 475 | L | 712.50 | Represent client at hearing in Bk Ct on appointment as special counsel for purpose of bringing FDCPA case. |
| 3/27/2019 | MCL | 1.8 | 475 | L | 855.00 | Review and edit Complaint, including online research to review cases cited in the Complaint and insure block quotes are accurate and properly formated. |
| 3/29/2019 | MCL | 0.1 | 475 | L | 47.50 | Tc w/Rachel Greenleaf in Judge Huennekens' chambers re entry of order and SOL. |
| 4/11/2019 | MCL | 0.1 | 475 | L | 47.50 | Tc w/DWP re settlement demand to counsel for BCC. |
| 4/15/2019 | MCL | 0.2 | 475 | L | 95.00 | Review emails re settlement and tc w/DWP (0.1); tc w/client to discuss settlement proposal (0.1). |
| 4/26/2019 | MCL | 1.5 | 475 | L | 712.50 | Call Court to get hearing date, prepare fee application following successful settlement of FDCPA claim. |
| 5/28/2019 | MCL | 0.5 | 475 | L | 237.50 | Prepare notes for hearing on fee application (estimated time). |
| 5/29/2019 | MCL | 0.5 | 475 | L | 237.50 | Attend hearing on Application for Compensation (estimated time). |
| | | **9.7** | | | **4,607.50** | **Total Other Litigation** |

| | | | | | |
|------|-----|-----|------|-----|-----|
| *Totals* | | 9.7 | | | $4,607.50 |

## Boleman Law Firm, PC Expenses

| Date | Description | Count | Rate | Total |
|---|---|---|---|---|
| 3/12/2019 | Postage - Motions | 63 | $0.50 | $31.50 |
| 4/30/2019 | Postage - Notice of Application | 63 | $0.50 | $31.50 |
| | Total | | | $63.00 |

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re: Clarence Milton Staton, Jr.                    Case No. 18-32776-KRH
      Salina Ann Willis                                   Chapter 13
      AKA Clarence M. Staton, Jr.

      Debtors

### DECLARATION OF DALE W. PITTMAN

Dale W. Pittman declares under penalty of perjury that the following statements are true:

1.      I am over the age of 18 and have personal knowledge of the facts set forth herein.

2.      I am a member in good standing of the bars of the following courts:

Supreme Court of the United States
Washington, DC
February, 1997

Supreme Court of Virginia
Richmond, Virginia
June 8, 1976

U. S. Court of Appeals for the Fourth Circuit
Richmond, Virginia
September 2, 1980

U. S. District Court for the Western District of Virginia
Roanoke, Virginia

U. S. District Court for the Eastern District of Virginia
Richmond, Virginia
December 30, 1976

U. S. Bankruptcy Court for the Eastern District of Virginia
Richmond, Virginia
November, 1997.

3.      I am a 1971 graduate of Hampden-Sydney College and a 1976 graduate of the T.

C. Williams School of Law of the University of Richmond, Virginia. I am a member of the

Virginia State Bar, the Virginia Trial Lawyers Association, the Virginia Bar Association, the National Association of Consumer Advocates, and the Petersburg Bar Association, of which I am a past President. I am a member of the Council of the Virginia State Bar, the State Bar's governing body, currently serving in my sixth term as the elected representative of the Eleventh Judicial Circuit. I am a member of the Board of Governors of the Virginia Trial Lawyers Association, and I chair the VTLA's Consumer Law Section. I serve on the Board of Directors of the Legal Services Corporation of Virginia, which provides funding for programs offering civil legal assistance to low-income Virginians. I served as President of the LSCV Board for five years.

4.     From February 1, 1977 until September 13, 1996, I was employed by Southside Virginia Legal Services, in Petersburg, Virginia, as its General Counsel (Chief Executive Officer). My caseload at Southside Virginia Legal Services evolved over the years into a primarily consumer law practice.

5.     From September 16, 1996, until the present, I have maintained a private law practice with an office located in Petersburg. My work in private practice is limited exclusively to the representation of consumers, with particular emphasis on representing consumer debtors under the Fair Debt Collections Practices Act. I have a statewide consumer law practice, and have represented consumers from all regions of the Commonwealth and elsewhere.

6.     I was a contributing editor to the consumer law sections of *Virginia Practice Manual*, a practice manual for Legal Aid lawyers in Virginia, and for private lawyers handling cases under the auspices of *pro bono* initiatives in Virginia.

7.     Pleadings and discovery from many of my consumer law cases appear in the National Consumer Law Center's *Consumer Law Pleadings*, nationally distributed form books of

consumer law pleadings, beginning in 1994. Pleadings and discovery from my cases appear in Books 1, 2, 5, 6, 7, 10, and 11.

8.    I have given over eighty lectures to lawyers that qualified for continuing legal education credit.

9.    I have made two presentations on consumer protection law and litigation to Virginia's General District Court judges at the Judicial Conference of Virginia for General District Court judges, one in 1987 on consumer protection laws generally and one in 2008 on arbitration in consumer financial services cases.

10.    My consumer protection law continuing legal education lectures include the following:

| | | |
|---|---|---|
| Phone Cases | 2018 Fair Debt Collections Conference, Chicago | March 19, 2018 |
| Consumer Protection Litigation and Bankruptcy: Intersections and Collisions, Fair Debt Collections Practices Act | Richmond Bar Association, Richmond | October 24, 2017 |
| Class Actions and Multiple Claims: End Games Planning | Hampden-Sydney Bar Association CLE Event Hampden-Sydney | October 20, 2017 |
| Debt Collection in Virginia (co-presenter with Judge Robert A. Pustilnik and Robert P. Quadros, Esquire) | Virginia CLE Charlottesville | September 18, 2017 |
| Serious Illness, the Law, and Pro Bono Services, Part 3: Relief from Creditors Fair Debt Collections Practices Act | Legal Information Network Cancer, in conjunction with Virginia State Bar Access to Legal Services Committee Webinar | November 17, 2016 |

| | | |
|---|---|---|
| Representing the Pro Bono Client: Consumer Law Basics 2016 | Practicing Law Institute, San Francisco | July 22, 2016 |
| Fair Debt Collections Practices Act | Old Dominion Bar Association Winter Meeting, Williamsburg | January, 30, 2016 |
| Fair Debt Collections Practices Act Overview | Virginia State Bar Young Lawyers Section Professional Development Conference | September 24, 2015 |
| Consumer Law (FDCPA) | A Law Day Celebration Ft. Lee, Virginia | May 1, 2015 |
| FDCPA: Ask the Experts | National Association of Consumer Advocates Fair Debt Collection Training Conference, Washington, DC | March 11, 2015 |
| "It May Not Be a Payday Loan...." | Virginia Poverty Law Center 2014 Annual Statewide Legal Aid Conference, Portsmouth | October 23, 2014 |
| Meeting the Legal Needs of Individuals Facing Serious Illness Through Pro Bono – Relief From Creditors | Virginia State Bar and the Legal Information Network for Cancer Webinar | April 23, 2014 |
| Ethical Responsibilities of Class Counsel to Class Representatives, the Class and Objectors | Fair Debt Collection Practices Act Training Conference, San Antonio, Texas | March 8, 2014 |
| Fair Debt Collections Practices Act | Working With Military Clients, Military Law Section of the Virginia State Bar, Williamsburg, Virginia | October 18, 2013 |

| | | |
|---|---|---|
| How the Consumer Bar Views FDCPA Compliance by Collection Attorneys | National Association of Retail Collection Attorneys Fall Collection Conference, Washington, DC | October 17, 2013 |
| Making the Bad Guys Pay | Virginia Poverty Law Center, Richmond | May 9, 2013 |
| FDCPA:  Ask the Experts | National Association of Consumer Advocates Fair Debt Collection Training Conference, Baltimore, Maryland | March 8, 2013 |
| FDCPA Update | JAG School, Charlottesville, Virginia | December 11, 2012 |
| Fair Debt Collections Practices Act | VA CLE, Charlottesville, Virginia | September, 2012 |
| FDCPA | ABA Standing Committee on Legal Assistance to Military Personnel, George Mason University Law School | March 15, 2012 |
| Fair Debt Collections Practices Act | Ft. Lee Legal Assistance Division JAG Office CLE | May 5, 2011 |
| Debt Collection:  Protecting Consumers in Debt Collection and Arbitration | Federal Trade Commission Roundtable, Washington, DC | December 4, 2009 |
| Handling Fair Debt Collections Practices Act Cases | 65th Legal Assistance Course, The Judge Advocate General's Legal Center and School, Charlottesville, Virginia | November 16, 2009 |
| Handling Fair Debt Collections Practices Act Cases | VPLC Statewide Legal Aid Conference, Williamsburg, Virginia | November 5, 2009 |

| | | |
|---|---|---|
| Challenging Predatory Small Loans | National Consumer Law Center Consumer Rights Litigation Conference, Philadelphia | October 23, 2009 |
| The Fair Debt Collections Practices Act: Update 2009 | VA CLE Webinar | September, 2009 |
| Handling Fair Debt Collections Practices Act Cases | 2009 Mid-Atlantic Joint Services Consumer Law Symposium, Naval Legal Service Office Mid-Atlantic Legal Assistance Department, Norfolk, Virginia | June 12, 2009 |
| Handling Fair Debt Collections Practices Act Cases | 64th Legal Assistance Course, The Judge Advocate General's Legal Center and School, Charlottesville, Virginia | April 2, 2009 |
| Defending Consumers in Medical Debt Collection Cases | National Consumer Law Center's Consumer Rights Litigation Conference in Portland, Oregon | October, 2008 |
| Combating Consumer Issues Facing the Military, FDCPA Cases | Consumer Law Intensive for Military Personnel Advocates, National Consumer Law Center's Consumer Rights Litigation Conference in Portland, Oregon | October, 2008 |
| Issues in Arbitration Cases | Judicial Conference of Virginia for District Court Judges, Virginia Beach | August 13, 2008 |
| A Perfect Storm – The Intersection of the FDCPA and the FCRA in Debt Collection Harassment Cases | Virginia CLE Solo and Small Firm Institute, Williamsburg, Virginia | May 13, 2008 |

| | | |
|---|---|---|
| Defending Debt Collection Suits | National Consumer Rights Litigation Conference, Washington, D.C. | November 11, 2007 |
| Emerging Issues in Debt Collection Abuse & False Credit Reporting | Virginia Trial Lawyers Association Solo & Small Firm Conference, Richmond | October 19, 2007 |
| Collecting Consumer Debts: The Challenges of Change. Concerns About Debt Collection: The Consumer's Perspective | Federal Trade Commission, Washington, D.C. | October 10, 2007 |
| The Fair Debt Collections Practices Act (Including 2006 Amendments) | Virginia CLE | September 24, 2007 |
| Fair Debt Collections Practices Act | Naval Legal Service Office Mid-Atlantic Joint Services Consumer Law Symposium, Norfolk | May 11, 2007 |
| How to Win (or Not Lose) an Arbitration | National Consumer Rights Litigation Conference Miami, Florida | November 11, 2006 |
| Consumer Debt Collection | 59th Legal Assistance Course The Judge Advocate's School Charlottesville | November 2, 2006 |
| Consumer Credit: Remedies You Should be Aware of | Virginia Trial Lawyers Association Solo & Small Firm Conference, Williamsburg | October 20, 2006 |
| Collection Law From Start to Finish (Presentation on the FDCPA) | National Business Institute Richmond | October 10, 2006 |
| Overview of the Fair Debt Collections Practices Act | Framme Law Firm, Richmond | June 23, 2006 |

| | | |
|---|---|---|
| Fair Debt Collection Practices Act | Naval Justice School Newport, Rhode Island | May 22 , 2006 |
| Fair Debt Collection Practices Act – Essential Tips for Both Debtors and Creditors | Virginia CLE - 4th Annual Advanced Consumer Bankruptcy, Richmond | April 28, 2006 |
| Fair Debt Collection Practices Act | 3rd Annual Naval Legal Service Office, Mid-Atlantic, Auto Fraud Symposium, Norfolk | April 12, 2006 |
| What the Virginia Lawyer Must Know about Consumer Protection | Solo and Small Firm Conference – Virginia Trial Lawyers Association, Charlottesville | September 30, 2005 |
| Points to Consider if You are Going to Arbitration | National Consumer Law Center's 13th Annual Consumer Rights Litigation Conference | November 7, 2004 |
| Protecting Your Client's Consumer Rights – Fair Debt Collections Practices Act | Virginia CLE - Richmond and Tysons Corner | April 21 and 22, 2004 |
| Fair Debt Collections Practices Act Training Conference – Practice Issues | National Consumer Law Center and National Association of Consumer Advocates, Kansas City | February 22, 2004 |
| Fair Debt Collections Practices Act | Henrico County Bar Association and Virginia Creditor's Bar Association, Richmond | February 19, 2004 |
| Using Experts in Automobile Sale Wreck Damage Cases | IVAN Diminished Value Conference, Chesapeake | January 31, 2004 |

| | | |
|---|---|---|
| Consumer Law: Everything You Need to Know to be an Expert in Handling the Latest in Consumer Cases | First Annual Solo and Small Firm Conference – Virginia Trial Lawyers Association, Charlottesville | October 10, 2003 |
| Points To Consider If You Are Going To Arbitration | Virginia Women Attorney's Association, Southside Chapter, Petersburg | July 31, 2003 |
| Fair Debt Collection Practices Act | Virginia CLE, First Advanced Consumer Bankruptcy Conference | May 2, 2003 |
| Fair Debt Collection Practices Act Fair Credit Reporting Act | Naval Justice School Newport, Rhode Island | April 3, 2003 |
| Overview of the Fair Debt Collections Practices Act | Framme Law Firm, Richmond | December 17 & 18, 2002 |
| Arbitrating: Who's Afraid of the Big Bad Wolf? | National Consumer Law Center Consumer Rights Litigation Conference, Atlanta | October 26, 2002 |
| Mobile Home Litigation Issues | National Consumer Law Center Consumer Rights Litigation Conference, Atlanta | October 25, 2002 |
| Settlement Agreements and Confidentiality Issues: Recent Cases in the News and the Problems News Attention Can Create | Virginia Trial Lawyers Association Fall Fiesta, Richmond | September 28, 2002 |
| Practice Pointers Roundtable | Virginia Trial Lawyers Association Fall Fiesta, Richmond | September 27, 2002 |
| Arbitration and Beyond: What to Do If You Are Forced Into Arbitration and What Happens After the Arbitral Award | Virginia Trial Lawyers Association Fall Fiesta, Richmond | September 27, 2002 |

| | | |
|---|---|---|
| Fair Debt Collection | ABA Standing Committee on Legal Assistance for Military Personnel Legal Assistance Symposium, Quantico | August 15, 2002 |
| Practical Applications of Consumer Protection Laws for the General Practitioner – Part II | Virginia Women Attorneys Association, Southside Chapter, Petersburg | June 27, 2002 |
| Practical Applications of Consumer Protection Laws for the General Practitioner – Part I | Virginia Women Attorneys Association, Southside Chapter, Petersburg | April 25, 2002 |
| Federal Court-Fun & Easy | Annual Statewide Legal Aid Conference, Virginia Beach | November 1, 2001 |
| FDCPA Compliance for the Virginia Practitioner | National Business Institute CLE for Virginia Lawyers, Richmond | October 11, 2001 |
| Use of Magnuson-Moss Warranty Act in the Recovery of Attorney's Fees | Virginia Trial Lawyers Association Fiesta 3, Richmond | September 28, 2001 |
| Credit Reporting Abuse | Petersburg Kiwanis Breakfast Club, Petersburg | September 18, 2001 |
| A Consumer Lawyer's Perspective on Mobile Home Transactions | Virginia Manufactured Housing Association, Virginia Beach | August 8, 2001 |
| Debt Collection Harassment, Credit Reporting Abuse, Home Solicitation Sales, Fraud. | Elder Law Day | May 11, 2001 |
| Truth in Lending Act and Title Issues in Car Sales | VA Independent Automobile Dealers Association, District 1 Dinner Meeting, Virginia Beach, Virginia | April 11, 2001 |

| | | |
|---|---|---|
| What Do These Attorneys Know About The Used Car Business That You Don't? | VA Independent Automobile Dealers Association, District 2 Dinner Meeting, Richmond, Virginia | January 30, 2001 |
| Mobile Home Litigation Issues | National Consumer Law Center Consumer Rights Conference | October 28, 2000 |
| Update on the Fair Debt Collection Practices Act | Virginia CLE® | July 12 and 19, 2000 |
| Consumer Privacy in the Electronic Age | The Bar Association of the City of Richmond | May 31, 2000 |
| Consumer Law Update for Virginia Practitioners, Fair Debt Collection Practices Act. | Virginia CLE® | December 7 and 8, 1999 |
| Recent Developments in Fair Debt Collection, With an Emphasis on the Fourth Circuit | Annual Statewide Legal Aid Conference | November 3, 1999 |
| Recent Developments in Fair Debt Collection | The Bankruptcy Section of the Bar Association of the City of Richmond | October 26, 1999 |
| Consumer Law Seminar | Office of the Staff Judge Advocate, Ft. Eustis, Virginia | August 27, 1999 |
| Automobile Fraud and Financing Issues | Annual Statewide Legal Aid Conference | November 11, 1998 |
| Consumer Law for Support Staff | Annual Statewide Legal Aid Conference | November 11, 1998 |
| First Day in Practice (Topic: Consumer Law Practice) | Virginia State Bar | November 3, 1998 |
| Complying with the Fair Debt Collection Practices Act in Virginia | National Business Institute CLE for Virginia Lawyers | September 9, 1998 |

| | | |
|---|---|---|
| Basic Overview of Several Consumer Protection Laws Available to Assist Victims of Consumer Fraud and Abuse | Charlottesville-Albemarle Bar Association Bankruptcy/Creditors' Rights Committee | February 10, 1998 |
| Overview of Consumer Law for Support Staff | Annual Statewide Legal Aid Conference | November 6, 1997 |
| The Fair Debt Collection Practices Act | Annual Statewide Legal Aid Conference | November 6, 1997 |
| Recent Developments under the Fair Debt Collection Practices Act | Virginia Creditor's Bar Association | September 25, 1997 |
| Fair Debt Collection Practices Act | 10th Circuit Bar Association | April 23, 1997 |
| Complying With the Fair Debt Collection Practices Act in Virginia | National Business Institute CLE for Virginia Lawyers | February 11, 1997 |
| Handling Repossession Cases (gave segment on odometer law) | Virginia Legal Services Consumer Law Task Force | |
| State and Federal Consumer Protection Statutes Frequently Applicable to General District Court Cases | Judicial Conference of Virginia General District Court Judges | April 29, 1989 |
| Everything Under the Sun You Ever Wanted to Know About Handling Home Improvement Cases | Elderly Law Task Force of Virginia Legal Services Programs | |
| Consumer Law for Non Consumer Lawyers | Virginia Legal Services Attorneys | |
| Handling Home Improvement Cases | Consumer Law Training for Virginia Legal Services Attorneys | |

11.     The Summer 2006 edition of *The Journal of the Virginia Trial Lawyers Association* included "Disputing Home Loan Servicing Abuse Through RESPA," an article that I prepared for that publication.

12.     From 2001 through 2010, I prepared annual reports on Virginia law for the American Bar Association's *Survey of State Class Action Law*.

13.     I was Section Chairman and Program Moderator for a Virginia Trial Lawyers Association Consumer Law Seminar entitled "Keeping the Big Boys Honest," that took place on April 25, 1997, and covered the Fair Debt Collections Practices Act, the Fair Credit Reporting Act, Consumer Class Actions, Motor Vehicle Litigation, and Recovering Attorney's Fees in Consumer Litigation. I was Program Chair for the Consumer Law portion of the VTLA's February Fiesta CLE that took place in Williamsburg in February 2000. I was a presenter on Mobile Home Sales, and in a Consumer Law Practice Roundtable. I was Program Chair for the Consumer Law portion of the VTLA's Fall Fiesta that took place in Williamsburg on October 14 and 15, 2000, and was a presenter on Emerging Issues in Mobile Home Sales Fraud. I was Program Chair for the Consumer Law portion of the VTLA's Fiesta 3 that took place in Richmond on September 28 and 29, 2001, and was a presenter on "Use of the Magnuson-Moss Warranty Act to Recover Attorney's Fees." I was Program Chair for the Consumer Law portion of the VTLA's Fiesta 2002 that took place in Richmond on September 27 and 28, 2002, and was a presenter on "Settlement Agreements and Confidentiality Issues: Recent Cases in the News and the Problems News Attention Can Create," "Arbitration and Beyond: What to Do If You Are Forced Into Arbitration and What Happens After the Arbitral Award," and a roundtable participant in a "Practice Pointers Roundtable."

14.     On November 9, 2007, I received the 2007 Consumer Attorney of the Year Award from the National Association of Consumer Advocates at its Annual Meeting in Washington, D.C. On October 21, 2010, I received the *Virginia Lawyers Weekly* "Leader in the Law 2010" award. On November 4, 2010, I received the Virginia Poverty Law Center's John Kent Shumate, Jr. Advocate of the Year Award, in recognition of my having made a significant impact in advocating for low-income Virginia residents. The Virginia Trial Lawyers Association recognized me as the fifth recipient of its Oliver White Hill Courageous Advocate Award at the VTLA's 2014 annual convention, an award periodically presented to an advocate who has demonstrated courage and commitment to the ideals of justice in representing an individual or cause at considerable personal risk. I received the Dr. David E. Marion Award for Legal Excellence, presented by the Hampden-Sydney College Bar Association, on October 20, 2017. I have been selected to Virginia Super Lawyers every year since 2011. I was recently named to the Virginia Lawyers Hall of Fame for 2019 by Virginia Lawyers Media, being honored for my career accomplishments, contributions to the development of the law in Virginia, contributions to the Bar and to the Commonwealth at Large and efforts to improve the quality of justice in Virginia.

15.     I have been involved in many consumer cases involving a range of consumer protection laws, with an emphasis on the Fair Debt Collection Practices Act.  Fair Debt Collection Practices Act, Fair Credit Reporting Act and Equal Credit Opportunity Act cases that I have handled alone or co-counseled with others include *Withers v. Eveland*, 988 F. Supp. 942 (E.D. Va. 1997); *Creighton v. Emporia Credit Service, Inc.,* 981 F. Supp. 411 (E.D. Va. 1997); *Morgan v. Credit Adjustment Board*, 999 F. Supp. 803 (E.D. Va. 1998); *Talbott v. GC Services Limited Partnership*, 53 F. Supp. 2d 846 (W.D. Va. 1999); *Talbott v. GC Services Limited*

*Partnership*, 191 F.R.D. 99 (W.D. Va. 2000); *Woodard v. Online Information Servs.*, 191 F.R.D. 502 (E.D.N.C., Jan. 19, 2000); *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS 18413 (E.D. Va. 2000); *Kelly v. Jormandy*, 2005 U.S. Dist. Lexis 29901 (W.D. Va. 2005); *Gansauer v. Transworld Systems, Inc.*, Civil Action No. 7:00cv00931 (W.D. Va. 2007); *Croy v. E. Hall & Associates, P.L.L.C.*, 2007 U.S. Dist. LEXIS 14830 (W.D. Va. 2007); *Turner v. Shenandoah Legal Group, P.C.*, 2006 U.S. Dist. LEXIS 39341 (E.D. Va., June 12, 2006); *Karnette v. Wolpoff & Abramson L.L.C.,* 2006 U.S. Dist. LEXIS 53382 (E.D. Va. Aug. 2, 2006); *Karnette v. Wolpoff & Abramson, L.L.P.,* 2007 U.S. Dist. LEXIS 20794 (E.D. Va. March 23, 2007); *Bicking v. Law Offices of Rubenstein and Cogan*, 783 F. Supp. 2d at 841v (E.D. Va. 2011); *James v. Encore Capital Corp.*, No. 3:11cv226 (E.D. Va.), *Goodrow v. Friedman & MacFadyen, P.A.,* 788 F. Supp. 2d 464 (E.D. Va. 2011); *Goodrow v. Friedman & MacFadyen, P.A.,* 2013 U.S. Dist. LEXIS 105395 (E.D. Va. July 26, 2013); *Kelly v. Nationstar*, 2013 U.S. Dist. Lexis 156515 (E.D. VA 2013); *Cross v. Prospect Mortgage, LLC*, 986 F. Supp. 2d 688 (E.D. Va. 2013); *Fariasantos v. Rosenberg & Associates, LLC*, 2014 WL 928206, 2014 U.S. Dist. Lexis 30898, (E.D. Va. 2014); *DeCapri v. Law Offices of Shapiro Brown & Alt, LLP*, 2014 U.S. Dist. Lexis 131979, 2014 WL 4699591 (E.D. Va. 2014); *Lengrand v. WellPoint*, No. 3:11-CV-333 (E.D. Va.); *Henderson v. Verifications, Incorporated*, Civil Action No. 3:11cv514 (ED Va.); and *Thomas v. Wittstadt Title & Escrow Company*, LLC, No. 3:12cv450 (E.D. Va.); *Souter v. Equifax Information Services, LLC*, 307 F.R.D. 183 (E.D. Va. 2015); *Henderson v. Corelogic, Inc., et al.*, Civil Action No. 3:12cv97 (E.D. Va.); *Berry, et al. v. LexisNexis Risk & Information Analytics Group, Inc.*, Civil Action No. 3:11cv754 (E.D. Va.); *Henderson v. First Advantage Background Services Corp.*, Civil Action No. 3:14cv221 (E.D. Va.); *Cornell v. Brock & Scott, PLLC*, Civil Action No. 3:14cv841 (E.D. Va.); and *Reese v. Stern & Eisenberg Mid Atlantic, PC*,

Civil Action No. 3:16cv496 (E.D. Va.). I was one of several lawyers representing plaintiff classes in a Multidistrict FDCPA class action, styled *In Re Dun & Bradstreet, Inc. Debt Collection Practices Litigation*, MDL #1198. The cases, originally transferred by the Judicial Panel on Multidistrict Litigation to the Western District of Virginia, Danville Division, for consolidated pretrial proceedings, were centralized before the Northern District of Illinois for purposes of finalizing settlement. Classes were certified in *Talbott, Woodard, Gansauer, Karnette, Bicking, Goodrow, Kelly, Fariasantos, DeCapri, Lengrand, Henderson v. Verifications, Incorporated, Thomas, Soutter, Henderson v. Corelogic, Inc., Berry, Henderson v. First Advantage Background Services Corp., Cornell and Reese*.

16.     I served as Special Master in the case styled *Silva v. Haynes Furniture Company, Inc.,* Civil Action No. 4:04cv082, E.D. Va., an ECOA/FCRA class action, having been appointed by Judge Kelley on January 27, 2006.

17.     Less than a handful of Virginia attorneys are willing to accept consumer cases because of the special expertise required and the risk of nonpayment. I request attorney's fees at the rate of $550.00 per hour. I believe that the amount requested is reasonable, and that it is less than the rates being charged by many attorneys of similar experience and expertise in Virginia's federal and state courts.

18.     My standard hourly billing rate is $550.00. That is the rate I charge clients for representation in consumer cases.

19.     An earlier $425 hourly rate was approved in *Randle v. H&P Capital, Inc.,* Civil Action No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994 (E.D. Va. July 21, 2010), adopted in part in 2010 U.S. Dist. LEXIS 101509 (E.D. Va. Sept. 23, 2010); affirmed in part and appeal

dismissed in part by *Randle v. H&P Capital, Inc.*, 2013 U.S. App. LEXIS 4506 (4th Cir. Va., Mar. 5, 2013).

20.     My fee at a subsequent $475 hourly rate was approved in *Berry v. LexisNexis Risk & Information Analytics Group, Inc., et al*, 3:14cv754-JRS-MHL, as was the $150 billing rate of my paralegal, Karen Graham. In *Berry*, class counsel, myself and co-counsel, submitted a lodestar-based fee request, placing our hours expended and hourly rates before Judge Spencer for decision. Judge Spencer approved the requested award, and also added a risk multiplier of 1.99, and the Fourth Circuit approved that award in full. *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016).

21.     I raised my hourly rate to $550 on November 1, 2016.

22.     My $550 hourly rate was recently approved in an FDCPA case in the Eastern District of Virginia, Richmond Division case, *Levy v. Pioneer Credit Corp.*, Civil Action No. 3:16cv864. The Court found my $550 hourly rate to be acceptable, noting that "the novelty and difficulty of the questions I think is reflected in the hourly rate because, candidly, most lawyers in Richmond – and even in larger metropolitan areas, such as Washington or New York, don't really have the knowledge and experience to handle a case like this. But, again, I think that is reflected in the hourly rate." The transcript of the June 12, 2017 hearing on my statutory attorney's fees request is attached as Exhibit A.

23.     My $550 hourly rate and the $200 hourly rate of Karen Graham were approved by this Court on March 22, 2018 in *Henderson v. Corelogic National Background Data, LLC*, Civil Action No. 3:12cv97, Document 501, and *Witt v. Corelogic Saferent*, LLC, Civil Action No. 3:12cv386, Document 374. It was later approved in *Harris v. Redneck Recovery & Towing,*

*LLC.*, Civil Action No. 3:17cv00741-REP (ED VA, May 19, 2018), Doc # 16, and *Jones v. CNU of Kansas*, McCammon Group mediation ordered by Judge Philips (Retired Judge Stillman, Order entered May 7, 2018, Exhibit B).

24.     My caseload consists almost exclusively of consumer protection matters on behalf of consumers, with a heavy emphasis on cases under the Fair Debt Collections Practices Act. I undertake representation in most cases with the expectation of being paid a contingency amount from the proceeds of recovery, or being paid based on an award of fees pursuant to a fee shifting statute such as the FDCPA.  I also represent many consumers on the basis of fees paid to me directly by the individual clients. In those cases, the rate of compensation that I require for my services is based on the hourly rate of $550.00.

25.     I am able to bill at $550.00 per hour because I have over forty years of experience as a consumer protection lawyer. Hardly any other attorneys in Virginia have such extensive experience representing consumers, and I know of no other lawyer in Virginia whose practice is limited to a consumer law practice aimed heavily at the FDCPA.

26.     I have extensive experience in cases brought under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"). I routinely represent plaintiffs in cases brought in the Eastern District of Virginia under the FDCPA. I have been involved in many cases involving requests for attorneys' fees under the FDCPA and am familiar with the rates charged by both plaintiffs' and defense attorneys in this region. My knowledge of the prevailing rates in this region comes from a variety of sources, including my own personal experience requesting, or opposing requests for, attorneys' fees, discussions with other attorneys, advertised rates, case decisions and other publications. I have had an opportunity to survey the current hourly rates charged in this District and Division, as well as in the consumer protection field. My current

billing rate is $550 per hour. Given the specific knowledge I have as to hourly rates charged and approved in this District and Division, I am comfortable stating that the average hourly rates for federal litigation attorneys in this District and Division range between $300 and in excess of $900.

27.     Karen A. Graham has been my paralegal for twenty-two years. The hourly billing rate for work performed by Ms. Graham is $200.00. Ms. Graham is a seasoned and experienced Rocket Docket civil litigation paralegal.

28.     Co-counsel and I divided work responsibilities in a manner designed to promote efficiency and effectiveness. My roll in this case has generally been that of reviewing and analyzing FDCPA liability issues, preparing and tendering a settlement demand to the debt collector, and negotiating a settlement, which has now been consummated.

29.     To date, I have devoted 7.5 hours in this case. Karen A. Graham, my paralegal, has devoted 2.5 hours to this case, for a total of $4,625.00 in fees.  Costs associated with this case total $417.95.  Fees plus costs total $5,042.95.  My firm's itemization of time and costs is attached as Exhibit C.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

DATED:  April 29, 2019

                                                          ____/s/ Dale W. Pittman_____
                                                          Dale W. Pittman (VSB No. 15673)
                                                          *Counsel for Debtor Salina Ann Willis*

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


Sandra E. Levy,

                                    Plaintiff,

         versus                              3:16 CV 864

Pioneer Credit Recovery, Inc.,

                                    Defendant




        Before:  HONORABLE JOHN A. GIBNEY, JR.
               United States District Judge




                   June 12, 2017

                Richmond, Virginia




                GILBERT F. HALASZ
              Official Court Reporter
                 U. S. Courthouse
               701 East Broad Street
               Richmond, VA 23219

Dale Pittman, Esq.
for the plaintiff




Louis Rouleau, Esq.
Pascal Naples, III, Esq.
for the defendant

1          THE CLERK:  Case number 3:16 CV 864.

2          Sandra E. Levy versus Pioneer Credit Recovery.

3          Mr. Dale Pittman represents the plaintiff.

4          Mr. Louis Rouleau and Pascal Naples represent the

5    defendant.

6          Are counsel ready to proceed?

7          MR. PITTMAN:  Plaintiff is, Your Honor.

8          THE COURT:  All right.

9          We are here today on plaintiff's motion for

10   attorney's fees.  I have read the papers in this case and

11   I am wondering whether the lawyers from Pioneer have taken

12   a look at the decision by Judge Davis decided in about the

13   middle of May.

14         What is the name of that case, Sarah?

15         LAW CLERK:  I can look it up.

16         THE COURT:  Have you seen that?  The case that

17   settled for $5,000 and he awarded a $30,000 fee.

18         Have you reviewed that case?

19         MR. ROULEAU:  Your Honor, I am not sure if I have.  I

20   don't think I have.  It hasn't caught my attention.  I

21   reviewed the cases.  I thought I reviewed all the cases

22   cited by both parties, but I am not familiar --

23         THE COURT:  I don't think it was cited by anybody,

24   because it was decided after I think you all completed

25   your submissions in this case.

1          Well, let me just ask the defendants this.

2          Do you disagree with the hourly rate of $550 from

3     Mr. Pittman in this case?

4          MR. ROULEAU:  We do, Your Honor.

5          THE COURT:  Okay.  What is wrong with the rate?  What

6     is wrong?

7          And you are Mr. Rouleau?

8          MR. ROULEAU:  Excuse me, Your Honor, Louis Rouleau.

9          Your Honor, would you prefer I move to the podium?

10         THE COURT:  That would be good.

11         So tell me what is wrong with the rate of 550 an

12    hour.  What should it be?

13         MR. ROULEAU:  I apologize.  I have been a little

14    under the weather.

15         THE COURT:  Well, sorry to hear that.  It is going

16    around.

17         MR. ROULEAU:  Your Honor, we, as we set forth in our

18    objections, we think it slightly high.

19         THE COURT:  What should it be?

20         MR. ROULEAU:  Somewhere between 400 and probably that

21    particular rate.  And we were --

22         THE COURT:  Between 400 and 550?

23         MR. ROULEAU:  Yes, because we found a --

24         THE COURT:  Do you have an affidavit from a

25    practitioner saying that is what it should be?

1          MR. ROULEAU:  No, Your Honor.

2          What we cite in our brief is, we cited a case Lundie

3     versus Smith and Cohen, a January 2016 case.  And it just

4     stands for the simple proposition that 400 an hour for

5     senior counsel --

6          THE COURT:  That's from where?

7          MR. ROULEAU:  Eastern District of Virginia case.  It

8     is on page 12.  So that is where we are getting that

9     figure --

10         THE COURT:  Okay.

11         MR. ROULEAU:  -- to address your question.

12         THE COURT:  You don't have -- Mr. Pittman wasn't the

13    lawyer in that case?

14         MR. ROULEAU:  No, sir, he was not.

15         THE COURT:  Okay.

16         MR. ROULEAU:  Yes.

17         THE COURT:  And you also think that -- well, okay.

18         Let me hear from Pittman with respect to the number

19    of hours.

20         Mr. Pittman, I am a little perplexed, because I have

21    what looks like a bill to Ms Levy here that says, fees

22    ought to be 33,000 but you are requesting 20-some

23    thousand.  What is the story with that?

24         You just cut them back to be reasonable?

25         MR. PITTMAN:  Cut them back because whenever I have

1    been before this court in, for lack of better a word, a

2    fee fight, I always wanted to make sure that I am not

3    asking for anything that I haven't earned.

4        THE COURT:  You earned it either today or sometime in

5    the distant past when you started doing this.

6        MR. PITTMAN:  I hope so.

7        It is in the very distant past.  I have to say that I

8    haven't seen anyone this young admitted since I introduced

9    my son to Judge Brinkema a couple years ago.

10        The -- in this, one of the cases I cite --

11        THE COURT:  Okay.

12        So you have cut them back to make sure that your fees

13    are reasonable.

14        MR. PITTMAN:  Ten percent across the board to take

15    into consideration billing discretion, A, and as Judge

16    Lauck put it in the Randal case, to account for the

17    vagaries of billing entries.  For example, in one of the

18    entries that I didn't catch until after we heard from

19    Mr. Rouleau there is another case with Ms Levy against a

20    different debt collector, suit against a debt collector

21    for this company that used to be Sallie May, and I billed,

22    to read a Judge Ellis opinion, I said, I just said, I was

23    wrong in that, and I have reduced my fee across the board

24    ten percent hopefully I hope to avoid this.

25        THE COURT:  By more than ten percent, because, I

1    mean, as I read this bill that you have got here it says

2    total hours 65.70 which is 57 for you and 8.7 for your

3    paralegal, for a total of fee of 33,090.  But you are only

4    asking for 21,388; is that right?

5        MR. PITTMAN:  Twenty-one -- I don't remember seeing

6    that number.

7        THE COURT:  I am looking at your motion.  Are you

8    asking for 31,388?

9        MR. PITTMAN:  We filed a motion and asked for a

10    number at that point.  We then continued working on the

11    case through the point of the reply brief.

12        THE COURT:  How much are you asking for?

13        MR. PITTMAN:  We were asking for 29-something in the

14    reply memo.  We spent time yesterday preparing for today.

15    We are here today.  Would like to get paid for that.

16        THE COURT:  Asking for roughly $30,000.

17        MR. PITTMAN:  That's correct.

18        THE COURT:  Okay.  All right.

19        Do you have anything else to say?  I think I

20    understand your position on this pretty well.

21        MR. PITTMAN:  Well, if you think, if The Court thinks

22    it understands my position, the best thing to do is --

23        THE COURT:  You are doing pretty well.

24        MR. PITTMAN:  -- sit down and shut up.

25        I could speak to the Lundie case, but if I don't need

1    to, I am going to sit down.

2        THE COURT:  It is one of these cases that is unique.

3        Let me hear from Mr. Rouleau.

4        Rouleau, is that it?

5        MR. ROULEAU:  You said it correct.  Rouleau, Your

6    Honor.

7        THE COURT:  Rouleau.

8        Mr. Rouleau, I mean, as I sort of went through this

9    case you guys made it pretty clear from the start that

10   this was going to be a battle royal.  I mean, I looked at

11   your answer in this case.  And, for instance, you pleaded

12   the affirmative defense of the plaintiff lacks standing.

13   How does the plaintiff lack standing to bring this law

14   suit?

15       MR. ROULEAU:  Your Honor, at the time that we --

16       THE COURT:  That is your third affirmative defense.

17       MR. ROULEAU:  Your Honor, after SPOKEO a lot of these

18   FCDA cases are attacked initially and successfully on

19   SPOKEO grounds, and so I don't remember as I sit here

20   today on exactly what our thinking was, but, of course, we

21   had to assert an affirmative defense or we waived that.

22       THE COURT:  Okay.

23       Then your fourth or fifth affirmative defense is that

24   it is barred by the statute of limitations.  How does that

25   work in this case?

1      MR. ROULEAU:  Your Honor, we didn't have full --

2  first of all, we did not have full information at the

3  time.  I would say when we we first got the complaint we

4  noticed that --

5      THE COURT:  Okay.  Well then -- okay.

6      Well, how about this one?

7      It says that the plaintiff's contributory negligence

8  caused damages in this case.  How can the plaintiff

9  possibly be contributorily negligent on how the envelope

10 was sent by your folks to her?

11     MR. ROULEAU:  Well, without discovery, Your Honor, we

12 don't know, but we do know --

13     THE COURT:  Whoa.  Hang on.  The law suit is that you

14 think that she repackaged it in the envelope?  You know

15 here is the thing.

16     How about this one?

17     It is barred by the doctrine of unclean hands.

18     How is it possibly barred by the doctrine of unclean

19 hands?

20     MR. ROULEAU:  Your Honor, as I sit here today --

21     THE COURT:  You don't know, do you.  You didn't know

22 then.  You just wanted him to understand that this was

23 going to be a hard-fought case.  Is that a fair statement?

24     MR. ROULEAU:  It is not, Your Honor.

25     THE COURT:  Oh, you were just -- let me ask you this.

1    MR. ROULEAU:  Your Honor, if I may --

2    THE COURT:  Suppose Mr. Pittman had said that this

3    conduct by your clients caused caused Ms Levy the

4    intentional infliction of emotional distress.  You would

5    say, that is not supported by the facts in this case.

6    Everybody knows that is not supported.  This is a case

7    where the wrong -- the envelope showed that it was from a

8    loan collector.  That is not the intentional infliction of

9    emotional distress.  But, suppose Mr. Pittman then said,

10   well, if I don't plead it at the beginning I waive it, and

11   something might come up later on that would support it.

12   Would you think that would be a good way for him to

13   practice law?

14   MR. ROULEAU:  I think, Your Honor, we actually had

15   that discussion prior to our initial conference with you

16   on damages and experts.

17   THE COURT:  But on that particular tort.  That is the

18   tort I am talking about.

19   MR. ROULEAU:  Not necessarily, no, Your Honor.

20   THE COURT:  Oh.  Okay.  Well --

21   MR. ROULEAU:  Because we didn't --

22   THE COURT:  -- you take a different view of

23   intentional infliction of emotional distress than I do

24   because it is clear it doesn't exist.

25   MR. ROULEAU:  Your Honor, if I may address --

1    THE COURT:  I will bet you would have said that to me

2  and you would have been down here asking for sanctions.

3    MR. ROULEAU:  Well, I don't think that would be the

4  case.

5    But, Your Honor, the point is, after the initial

6  pleading stage both parties worked very quickly, not on

7  the merits, but to resolve this case quickly.  There was

8  no discovery.  No depositions.  No rule 12(b)(6) motions.

9  Nothing.

10    There were some discussions, a brief call with Your

11  Honor.  So this wasn't, this wasn't -- this was not a

12  fight, notwithstanding the initial pleading stage, at all.

13  No discovery.  No preliminary motions.  No rule 56

14  motions.  Quickly we realized that the stumbling block was

15  fees, and we made an offer of judgment three times the

16  amount of the statutory amount.  So, respectfully, this

17  was not about a battle royal at all.  What I am saying

18  is --

19    THE COURT:  What do you think he ought to get in

20  fees?

21    MR. ROULEAU:  That is up to The Court's discretion.

22    THE COURT:  I know, but you --

23    MR. ROULEAU:  I would just note, Your Honor, that the

24  plaintiff received three times the statutory max, and the

25  fees, even at -- even at 21,000 or 21,388.50, which is in

1 the opening papers, is seven times that amount.

2   In the case where you are just dealing with an

3 initial pleading, really quick offer of judgment, I would

4 just note for The Court, and I leave it to the The Court's

5 good discretion.  And that --

6   THE COURT:  You don't -- what did you charge Pioneer

7 Credit Recovery in this case?

8   MR. ROULEAU:  I do not know, Your Honor.

9   THE COURT:  Okay.  Well, I think if you are going to

10 say that this is an unreasonable fee probably we should

11 see your billings as well.  I am going to enter an order

12 directing you to submit those to The Court, and we will

13 then take a look at those and decide what a reasonable fee

14 is.

15   MR. ROULEAU:  Your Honor, if I may -- of course I

16 will listen to The Court's instruction -- but I don't how

17 that is appropriate vis a vis my opposition regarding his

18 fee position.

19   THE COURT:  That is what we are going to do, okay?

20   MR. ROULEAU:  Okay, Your Honor.  I just note my

21 objection for the record, but thank you.

22   THE COURT:  Okay.

23   Here is how I tend to view this case.

24   You can sit down.

25   MR. ROULEAU:  Yes, Your Honor.

1      THE COURT:  I will tell you how I tend to view this

2   case.

3      I think the rate of 550 is acceptable.  There is an

4   affidavit that is submitted that says it is a reasonable

5   fee in this case, and it is submitted by someone who

6   understands the how these cases operate and the fees that

7   are charged in it.

8      Number.  The number of hours, I think Pioneer

9   probably has a point there that Mr. Pittman may have

10  gilded the lily a little bit in this case.  So if it were

11  up to me I would probably -- well, it is up to me, isn't

12  it? -- I will reduce reduce the number of hours somewhat.

13     And as far as the Johnson factors go, as I said a

14  moment ago, I think the time and labor required is

15  probably a little high.  But the novelty and difficulty of

16  the questions I think is reflected in the hourly rate

17  because, candidly, most lawyers in Richmond -- and even in

18  larger metropolitan areas, such as Washington or New York,

19  don't really have the knowledge and experience to handle a

20  case like this.  But, again, I think that is reflected in

21  the hourly rate.

22     The same thing is true of the skill required in this

23  case.  I think the factor of preclusion of work is pretty

24  neutral in this case.  The customary fee in the community,

25  I think we have a pretty small specialized bar that

1   handles these cases, or at least that handles them well.

2   And this fee of, or the rate, again, reflects that fact.

3        Whether it is a fixed or contingent fee, obviously it

4   is contingent.  There is a great deal of risk in any kind

5   of contingent case, but especially in this one.

6        Reviewing the time limitations is pretty neutral in

7   this case.

8        The amount of time and the results obtained, you

9   know, on the one hand it is a good result for her because

10  it takes care of a problem that she had.  But it is not

11  anything she is going to be able to retire on, or really

12  even go on much of a vacation on.  So it's not like she

13  got a ton of money in this case.  But it is also not like

14  Mr. Pittman is billing an enormous amount of time.

15       The next factor is the experience and reputation and

16  ability of the attorney, which in Mr. Pittman's case is

17  very high.  And, I will say, that the lawyers on the other

18  side are also of the highest reputation and ability.

19       The desirability of the case or undesirability of the

20  case.  Well, it is not as though he is representing,

21  Mr. Pittman was representing someone who was a pariah in

22  the community.  I think these cases are not desirable for

23  average lawyers; but, again, that is because of the nature

24  of the case, and it is reflected in the hourly rate.

25       The nature and length of the relationship with the

1    client is probably neutral in this case.  People come to

2    Mr. Pittman because Mr. Pittman handles these kinds of

3    cases.  So it is not like, maybe Ms Levy is someone that

4    he is now representing as she attempts to buy a business

5    or something, but I kind of doubt it.  I don't see any

6    evidence of that here.

7        Finally, awards in similar cases are all over the

8    place.  And the one I looked at, as I mentioned earlier,

9    is Judge Davis' ruling in Norfolk.

10       So if it were up to me -- and it is up to me -- I

11   would probably reduce Mr. Pittman's requested fees by

12   25 percent to reflect all of the efforts in this case,

13   which would get us to a number that I can't compute off

14   the top of my head.  But, it is probably around $24,000, I

15   guess.

16       And if the litigants want to -- well -- those are my

17   thoughts on the case.  You can proceed from here to

18   whatever is next for you.

19       How long, Mr. Rouleau, will it take you to get your

20   billings into The Court?

21       MR. ROULEAU:  Your Honor, to answer the first

22   question, before that question, if we could stop at 24, I

23   would rather stop the expenses and billing my client if

24   The Court enters $24,000 for Mr. Pittman and be done with

25   it.

1        THE COURT:  Are you all right with that?

2        Well, you can appeal it if you don't like it.  You

3    have heard my judgment.  And I will -- I am prepared today

4    to enter an order of $24,000.  You are welcome to appeal

5    if you want.  24,000 plus the costs you requested.

6        MR. PITTMAN:  Sure.

7        THE COURT:  All right.

8        Now, Mr. Rouleau, I am sorry Ms Israel is not here,

9    because I noticed that she is active in the Washington,

10    District of Columbia Lawyers Assistance Committee.  And I

11    really --

12        MR. ROULEAU:  She is.

13        THE WITNESS:  -- commend her for that.

14        MR. ROULEAU:  I will let her know that, Your Honor,

15    because that is a big deal for her.

16        THE COURT:  That is very, very important.  I am

17    active in the Virginia program, Lawyers Helping Lawyers.

18    And I commend her for that, and I commend you and your

19    firm for supporting her in that.

20        MR. ROULEAU:  Thank you, Your Honor.  I will let her

21    know.  That is extremely important to her.

22        THE COURT:  You have done a good job today, a

23    professional job, and I appreciate that.

24        Did I see something about your firm getting taken

25    over by a firm from another -- not taken over -- merging

1   with a firm from another country?

2      MR. ROULEAU:  We did merge with a London firm Bond

3   Dickenson, so I think it becomes official October 1.  We

4   will become Womble Bond Dickenson, but we will still drive

5   on the correct side in this country.

6      THE COURT:  Well, good.

7      And Ms Israel is driving on the correct side in all

8   ways that she can.

9      We will enter a judgment today.  Thank you very much

10  for a job well done.

11     Have a safe trip back up the road.

12               HEARING ADJOURNED.

13

14     THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

15

16          GILBERT FRANK HALASZ, RMR

17          OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25



May 7, 2018

Emily Conner Kennedy, Esq.
Mark C. Leffler, Esq.
Boleman Law Finn, P.C.
2104 W. Laburnum Avenue, Suite 201
Richmond, Virginia 23227

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, O.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803

Thomas D. Domonoske, Esq.
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard, Suite IA
Newport News, Virginia 23601

Charles K. Seyfarth, Esq.
Corey S. Booker, Esq.
LeClair Ryan, P.C.
Sun Trust Center - 24th Floor
919 East Main Street
Richmond, Virginia 23219

Re: Award in Arbitration -Burnetta Michelle Jones v. CNU of Kansas, LLC

Dear Counsel:

In connection with the settlement of the foregoing matter, you have asked me to determine the amount of attorneys' fees to award to plaintiff.

**Background**

This matter arises out of proceedings in the Richmond Division of the U.S. Bankruptcy Court for the Eastern District of Virginia. PlaintiffBumetta Michelle Jones filed a Chapter 13 Petition and the Court entered an automatic stay. A dispute arose over whether Defendant CNU of Kansas, LLC, violated the stay. Pursuant to 11 U.S.C. Section 362(a)( I), Plaintiff Jones filed a complaint for violation, and continued violation, of the automatic stay. In her complaint, Plaintiff Jones demanded damages, to include both actual and punitive damages and attorneys' fees and costs, all pursuant to 11 U.S.C. Section 362(k)(1).

1

Counsel first contacted me to mediate the broader dispute. However, during the week prior to the date set for the mediation conference, counsel agreed to settle their differences, and to seek a determination, through arbitration, of the amount of attorneys' fees to which plaintiff is entitled. Counsel then asked me to arbitrate the fee dispute.

From the pleadings filed in this arbitration, it appears that, in addition to the agreement between the parties to arbitrate the issue of attorneys' fees, the remaining settlement terms are as follows: Defendant has agreed to pay actual damages to plaintiff in the sum of $5,000 and to effect a change in its bankruptcy refund process; and in return, plaintiff has abandoned any claim she may have had for punitive damages.

Total Fees At Issue - October 27, 2017 Application And December 5, 2017 Supplemental Fee Declarations

Based on pleadings submitted on October 27, 2017, plaintiff asserts that three law firms provided legal services to her in connection with this matter. The firms and the fees for services rendered are as follows: Boleman Law Firm ($56,691.50); Consumer Litigation Associates, P.C. ($40,480.00); and The Law Office of Dale W. Pittman ($9,360.00).

The total of fees as of October 27, 2017, come to $106,531.50.

In Supplemental Fee Declarations dated December 5, 2017, plaintiffs attorneys have added relatively modest amounts to the total claim for attorneys' fees: Boleman Law Firm, including the fee claims of Mark C. Leffler and Emily Connor Kennedy ($3,520.50); Consumer Litigation Associates, P.C., including the fee claim of Thomas D. Domonoske ($2,860.00); and The Law Office of Dale C. Pittman, P.C., including the fee claim of Dale C. Pittman ($2,365.00).

Fees claimed on December 5, 2017, amount to $8,745.00.

The total amounts claimed by plaintiff, including both the fees demanded in pleadings dated October 27, 2017, and supplemented by fee declarations dated December 5, 2017, are as follows: Boleman Law Firm: $60,212.00 ($56,691.50 plus $3,520.50); Consumer Litigation Associates, P.C.: $43,340.00 ($40,480.00 plus $2,860.00); and The Law Office of Dale C. Pittman, P.C.: $11,230.50 ($9,360.00 plus $2,365.00).

Consequently, the total claim to be considered here is $115,277.00. (Plaintiff has not separately identified any costs to be recovered.)

I note that, in the pleading submitted on October 27, 2017, plaintiff reduced by ten percent the amount in attorneys' fees she claimed as of that date, which came to 106,531.50. Thus, on October 27, 2017, plaintiff made a formal demand of $95,770.35 in attorneys' fees. Explaining her reduced demand, plaintiff stated that the proposed downward reduction was a concession "in the interest of billing discretion and to account for any duplicative efforts that could have been avoided." *See* Application By Counsel For Plaintiff For Award Of Attorneys' Fees, page 13. The plaintiffs offer to reduce her

total claim to $95,770.35 anticipates the analysis that must be performed in this arbitration, and the adjustments that follow use sums that have not been voluntarily adjusted downward by plaintiff.

**The Record**

I have read and reviewed the following pleadings, etc.

(1) Application By Counsel For Plaintiff For Award Of Attorneys' Fees, a pleading supported by the following documents:

(a) Declaration of Mark C Leffler In Support Of Request For Attorney's Fees, together with the following attachments: (i) Declaration of L. Lee Byrd; (ii) Exhibit B [Excerpt of Transcript of Hearing on Motion of Midland Credit Management To Amend, etc.]; (iii) Objection of NC Financial Solutions of Utah, LLE to Consolidated Application By Counsel For Plaintiffs For Award Of Attorneys Fees And Reimbursement Of Expenses; (iv) Exhibit D [Email from Mark Leffler to Corey S. Booker, dated May 1, 2017]; (v) Exhibit E [Email from Corey S. Booker to Mark Leffler, dated May 2, 2017]; (vi) Exhibit F [Email from Mark Leffler to Corey S. Booker, dated May 11, 2017]; Exhibit G (vii) [Email from Mark Leffler to Corey S. Booker, dated May 11, 2017]; (viii) Exhibit H [Email from Mark Leffler to Corey S. Booker, dated April 13, 2017]; (ix); Exhibit I [Email from Tom Domonoske to Corey S. Booker and Mark Leffler, dated April 21, 2017]; (x) Exhibit J [Email from Corey S. Booker to Tom Domonoske and Mark Leffler, dated April 21, 2017]; (xi) Exhibit K [Boleman Law Firm, P.C., Time Records for Timekeeper MCL]; and (xii) Exhibit L [Boleman Law Firm, P.C., Time Records for Timekeeper GMC].

(b) Declaration of Emily Connor Kennedy In Support Of Request For Attorney's Fees, a pleading supported by the following documents: (i) Exhibit A [Boleman Law Firm, P.C., Time Records for Timekeeper ECF].

(c) Declaration of Thomas D. Domonoske In Support Of Plaintiff's Motion For Attorney's Fees, a pleading supported by the following documents: (i) Exhibit A [Domonoske Time Records]; (ii) Exhibit B [Domonoske Professional Biography]; (iii) Exhibit C [Domonoske Email Log]; (iv) Exhibit D [Email About Rates].

(d) Declaration Of Dale W. Pittman In Support Of Debtor's Motion For Attorney's Fees, a pleading supported by the following documents: (i) Exhibit A [Pittman Time Records]; (ii) Exhibit B [Declaration Of Dale W. Pittman In Support Of Plaintiffs Motion For Attorneys' Fees And Costs].

(2) CNU of Kansas, LLC's Objection To Application By Counsel For Plaintiff For Award Of Attorneys' Fees, a pleading supported by the following documents:

(a) Exhibit A [Complaint For Turnover Of Estate Assets And To Determine Violation Of Automatic Stay from U.S. Bankruptcy Court for the E.D. of Virginia (Richmond Division) in Charity, Fullerton, and Jones];

(b) Exhibit B [Black lined copy of Amended Complaint of Burnetta Michelle Jones];

(c) Exhibit C [PACER Records for Burnetta Jones Adversary Proceeding from U.S. Bankruptcy Court for the E.D. of Virginia (Richmond)];

(d) Exhibit D [Email from Mark Leffler to Corey S. Booker, dated March 28, 2017];

(e) Exhibit E [Initial Disclosures from U.S. Bankruptcy Court for the E.D. of Virginia (Richmond) in Charity and Jones];

(f) Exhibit F [Motions In Limine, including Notices, in Charity and Jones from U.S. Bankruptcy Court for E.D. of Virginia (Richmond Division)];

(g) Exhibit G [Summary of Timekeepers in Burnetta Michelle Jones, including hourly rate, hours, and amount billed, etc.];

(h) Exhibit H [Analysis of Jones Billing Records];

(i) Exhibit I [Exchange of emails from Mark Leffler to Corey S. Booker, dated March 20 and March 22, 2017];

(J) Exhibit J [Consolidated Applications By Counsel For Plaintiffs For Award Of Attorney Fee And Reimbursement Of Expenses from the U.S. Bankruptcy Court for the E.D. of Virginia (Richmond Division) in Charity, Edmonds, and Lane].

(3) Response To CashNet's Opposition To Application For Award Of Attorneys' Fees And Reimbursement Of Expenses.

(4) Supplemental Fee Declaration Of Mark c. Leffler In Support Of Plaintiffs Application For Attorneys' Fees and Costs a pleading supported by the following documents:

(a) Supplemental Fee Declaration Of Emily Conner Kennedy In Support Of Plaintiffs Application For Attorneys' Fees And Costs;

(b) Supplemental Fee Declaration Of Thomas D. Domonoske In Support Of Plaintiff's Application For Attorneys' Fees And Costs.

A review of the record reveals the following information regarding the time keepers who represented the plaintiff, the time spent by each time keeper, and their hourly rates.


**Holeman Law Firm - Time Keepers, Hourly Rates, and Time Spent**

<u>Application By Counsel For Plaintiff For Award Of Attorneys' Fees - October 27, 2017:</u>

Time keepers for the Boleman Law Firm include two attorneys, Emily Connor Kennedy, whose hourly rate is $350.00, and Mark C. Leffler, whose hourly rate in this matter is $435.00. In addition, Boleman has identified another time keeper, its paralegal, Gina M. Cross, whose hourly rate is $150.00. (The hourly rates for both Ms. Kennedy and Mr. Leffler were increased during their representation of the plaintiff as noted below.)

Ms. Kennedy's hourly rates in this matter times hours spent ($325.00 X 1.0 hours; $350.00 X 29.1) total $10,510.00. Mr. Leffler's hourly rates in this matter times hours spent ($425.00 X 10.1 hours; $435.00 X 95.4 hours) total $45,791.50. Ms. Cross' hourly rate ($150.00) times her hours spent (2.6) comes to $390.00. The total claim for attorneys' fees made on October 27, 2017 is $56,691.50.

<u>Supplemental Fee Declarations (Boleman Law Firm, Leffler and Kennedy) - December 5, 2017:</u>

Mr. Leffler claims the following additional fees: $1,870.50 (4.30 hours times his hourly rate of $435.00); and Emily Connor Kennedy claims the following additional fees: $1,645.00 (4.7 hours times her hourly rate of $350.00) Thus, an additional sum totaling $3520.50 is claimed by the Boleman Law Firm.

Total fees claimed by the Boleman Law firm under consideration here are $56,691.50 plus $3520.50, for a total claim of $60,212.00.

**Consumer Litigation Associates - Time Keepers, Hourly Rates, and Time Spent**

<u>Application By Counsel For Plaintiff For Award Of Attorneys' Fees-October 27, 2017</u>

Thomas D. Domonoske, an attorney, provided services in this matter. His hourly rate ($550.00) multiplied the hours he devoted to this matter (73.6 hours) total $40,480.00.

<u>Supplemental Fee Declaration (Consumer Litigation Associates, Domonoske)- December 5, 2017:</u>

Mr. Domonoske claims the following additional fees: $2,860.00 (5.2 hours times his hourly rate of $550.00).

Total fees claimed by Consumer Litigation Associates under consideration here are $40,480.00 plus $2,860.00, for a total claim of $43,340.00

**The Law Office of Dale W. Pittman, P.C.-Time Keepers, Hourly Rates, and Time Spent**

<u>Application By Counsel For Plaintiff For Award Of Attorneys' Fees - October 27, 2017</u>

Dale W. Pittman, an attorney, seeks an award of attorneys' fees in the amount of $9,240.00, based on his hourly rate ($550.00) times his hours devoted to this matter (16.8). In addition, Mr. Pittman employed a paralegal, Karen A. Graham, who spent limited time (.6) on this matter. The value of Ms. Graham's services at her hourly rate ($200.00) totals $120.00. The Pittman Law firm seeks a total of $9,360.00.

<u>Supplemental Fee Declarations (The Law Office of Dale W. Pittman, P.C., Pittman)- December 5, 2017:</u>

Mr. Pittman claims the following additional fees: $2,365.00 (4.3 hours times his hourly rate of $550.00).

Total fees claimed by The Law Office of Dale W. Pittman, P.C., are $9.360.00 plus $2,365.00, or $11,725.00.

**Total Fees Claimed By Counsel**

The total fees claimed are $60,212.00 (Boleman Law Firm), plus $43,340.00 (Consumer Litigation Associates), plus $11,725.00 (Law Office of Dale C. Pittman), for a total of $115,277.00.

**The Standard To Be Applied To Determine The Award Of Attorneys' Fees**

Counsel for plaintiffs have identified <u>Perdue v. Kenny,</u> 559 U.S. 542, 130 S.Ct. 1662 (2010) as controlling precedent. Defendant contends that <u>McAfee v. Boczar,</u> 738 F.3d 81 (4th Cir .2014) should guide the analysis of the reasonableness of the attorneys' fees claimed by plaintiff.

In *Perdue,* the Supreme Court adopted the so called "lodestar method," or "lodestar approach" for determining an award of legal fees in cases involving fee-shifting statutes, counseling that it "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case" Perdue, 559 U.S. at 550-552, 130 S.Ct. at 1671-72. (italics in original)

In a fee-shifting context, the lodestar method requires an analysis of both the number of hours spent by an attorney in representing a client as well as the hourly rate charged for each hour of time. It is determined by multiplying the hourly rate by the number of hours, after it has been determined that the hourly rate and the number of hours spent are reasonable. <u>Blum v. Stenson,</u> 456 U.S. 886, 897, 104 S.Ct. 1541 (1984).

Until *Perdue* was decided, many courts applied twelve factors to evaluate the reasonableness of awards of attorneys' fees. Johnson v. Georgia Highway Express Inc., 488 F2d 714 (5th Cir. 1974). The Fourth Circuit was among them. *See* Barber v. Kimbrell's Inc., 577 F.2[nd] 216 (4th Cir. 1978).

The *Johnson* factors included the following: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation: (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber, 511* F.2$^\circ$[d] at 226, n. 28.

In *Perdue*, the Supreme Court seemed to undermine the use of the so-called *Johnson* factors, as they were applied by the courts to determine the reasonableness of awards of legal fees in fee-shifting cases. The Court asserted that the *Johnson* factors "gave very little guidance to district courts" in awarding legal fees, "placed unlimited discretion in trial judges," and "produced disparate results." *Perdue*, 559 U.S. at 550-52, 130 S.Ct. at 1671-72.

The Court went on to state its intention to seek to "cabin" the discretion of the district courts that often followed upon the application of the "sometimes subjective" *Johnson* factors, by embracing the "lodestar approach," used by the Third Circuit in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 478 F. 2nd 161 (1973), appeal after remand, 540 F.2d 102 (1976). The Court noted that the "lodestar approach" achieved dominance after it decided Hensley Gisbrecht v. Barnhard, 535 U.S. 789. 801, 122 S.Ct. 1817 (2002). *Id.* at 559 U.S. 550-52, 130 S.Ct. at 1671-72

As the Court put it in *Perdue*, since *Gisbrecht*, the lodestar has become "the guiding light of our fee-shifting jurisprudence." *Id.* at *559* U.S. 550-52, 130 S.Ct. at 1671-72.

When it adopted the lodestar approach, the Court announced a strong presumption that the lodestar figure is reasonable in fee shifting jurisprudence, but it went on to state that the presumption may be overcome in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. *Id.* at 559 U.S. 554, 130 S.Ct. at 1673.

The 4th Circuit follows the "lodestar approach," while continuing to apply the Johnson factors to determinations regarding the reasonableness of the hourly rates claimed and the number of hours spent by attorneys in cases involving fee-shifting inquiries. McAfee v. Boczar, 738 F.3d 81 (4th Cir.2014).

The *McAfee* court has identified the basis for a proper calculation of an attorney's fee as a three-step process:

"First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.' Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set for the in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) Id. at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Id. at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." McAfee v. Boczar, 738 F.3d 81

With the foregoing analysis in mind, I have concluded that the "lodestar approach," announced in Perdue v. Kenny. 559 U.S. 542, 130 S.Ct. 1662 (2010), must be applied in a manner consistent with the three-step process set out in McAfee v. Boczar, 738 F.3d 81 (4th Cir 2014). This conclusion necessarily requires consideration of the *Johnson* factors in order to determine the "lodestar." Guided by these precedents, the inquiry that follows is calculated to lead to a proper determination of reasonable attorneys' fees and costs.

**The Lodestar Analysis**

Here are facts that can be gleaned from plaintiffs fee application dated October 27, 2017: plaintiff claims entitlement to a total fee of $106,531.50. (For the purposes of the lodestar analysis, this sum has <u>not</u> been reduced by ten percent.) In addition, plaintiffs supplemental fee applications dated December 5, 2017, contains a demand totaling $8,736.50.

The grand total representing plaintiff's demand for legal fees is $115,277.00. This sum represents the lodestar amount to which the plaintiff is entitled absent the consideration and application of the various Johnson factors to assure reasonableness with respect to hours and hourly rates.

Defendant argues that this amount must be reduced to $40,053.76, sum which includes a reduction based on defendant's assertion that plaintiff enjoyed partial or limited success.

<u>Step One - The Reasonableness of Hourly Rates</u>

Pursuant to the first step prescribed by *McAfee,* a determination must be made as to whether the hourly rates claimed by counsel for the plaintiff are reasonable.

Here are the hourly rates to be considered to determine if they are reasonable: Attorneys Emily Connor Kennedy ($350.00), Mark C. Leffler ($435.00), and their paralegal, Gina

M. Cross ($150.00); Attorney Thomas D. Domonoske ($550.00); and Attorney Dale W. Pittman ($550.00), and his paralegal, Karen A. Graham, ($200.00).

The *Johnson* factors that bear upon the calculation of the *reasonable hourly rate* are as follows: Factor 3 (skill required to properly perform legal services); Factor 4 (attorney's opportunity cost); Factor 5 (customary fee); Factor 6 (attorney's expectations at outset of litigation) and Factor 9 (experience reputation, and ability of attorney). In applying these factors, I find that the hourly rates charged by counsel are reasonable.

Defendant does not challenge the hourly rates charged by counsel for plaintiff, including the hourly rates of their paralegals. In any event, given the evidence in the record, any such a challenge would be unavailing.

As a general matter, consumer law and bankruptcy, the two areas of law within which plaintiff's attorneys practice, are highly specialized. This case arose in a bankruptcy court where knowledge of both bankruptcy law and practice as well as consumer protection statutes and regulations was necessary and essential. In her Declaration, Emily Connor Kennedy asserts that "[f]ew Virginia attorneys are willing to accept consumer cases because of the special expertise required and the risk of nonpayment." *See* Declaration Of Emily Connor Kennedy In Support Of Request For Attorney's Fees, page 2. Mark C. Leffler makes the same statement in support of his claim for attorney's fees. *See* Declaration Of Mark C. Leffler In Support of Request For Attorney's Fees, paragraph 8.

Defendant has not challenged these statements, which serve to satisfy, for each of the plaintiff's attorneys, the *Johnson* factors that relate to the required skill to properly perform the legal services rendered; the opportunity costs in pressing the litigation; and the undesirability of the case within the legal community. Each of plaintiffs lawyers has also adequately shown the experience, reputation and ability necessary to satisfy that *Johnson* factor.

The record adequately justifies Mr. Pittman's hourly rate of $550.00. Mr. Pittman, who supports his attorney's fee application with two Declarations, has been a lawyer in Virginia since 1976. His first professional position was as a legal aid lawyer. After many years of legal aid work, he entered private practice. Mr. Pittman is clearly a highly skilled and experienced lawyer who appears to have devoted himself to consumer law and consumer advocacy in his legal practice for many years. He has lectured and written extensively on this subject. He has been recognized by his peers and the profession, having received numerous awards for service to the bar and for legal excellence. It is clear from the lengthy list of cases provided by Mr. Pittman that he has extraordinary lmowledge and ability in the area of practice he has chosen, which includes this case. He states that his hourly rate in the matter is "within the range of the local prevailing market rate for services in the narrow area of [his] practice." *See* Declaration Of Dale W. Pittman In Support Of Debtor's Motion For Attorney's Fees (dated October 26, 2017), page 2.

Similarly, Mr. Domonoske's Declaration also demonstrates his devotion to consumer law and consumer advocacy. Mr. Domonoske has practiced law since 1986. Over the years,

he has developed extensive experience as a legal aid lawyer and in his private consumer law practice. He has served as a lawyer in a wide range of cases, including as an appellate advocate. He has been a teacher of law at two well regarded law schools. He has delivered lectures too numerous to count in the field of consumer law and consumer advocacy and he has frequently written on this area of the law. He has also been recognized by his peers and by the legal profession for his *pro bono* work and for his advocacy. In seeking approval for an award of reasonable legal fees, Mr. Domonoske makes the following unchallenged statement: "My hourly rate was established and adjusted after reviewing the hourly rates charged by federal court lawyers who represent clients in consumer protection cases in this part of Virginia, particularly the Richmond Division of the Eastern District of Virginia , and the legal skills and experience that correspond to those hourly rates." *See* <u>Declaration Of Thomas D. Domonoske In Support Of Plaintiff's Motion For Attorney's Fees,</u> paragraph 6. He goes on to say that "based on that information, [h]is current hourly rate is within the range of the local prevailing market rate for services in the narrow area in which [h]e works." *Id.* Mr. Domonoske's hourly rate of $550.00 finds sufficient support in the record.

Mr. Leffler claims an hourly rate of $435.00. Mr. Leffler became a lawyer in 1996. His practice has been limited to the representation of consumers and especially consumer debtors in bankruptcy. Mr. Leffler declares that "[he] is currently counsel of record in over 1,000 active bankruptcy cases in the Richmond, Newport News, and Norfolk Divisions of the Eastern District of Virginia." *See* <u>Declaration Of Mark C. Leffler In Support Of Request For Attorney's Fees,</u> paragraph 7. Among the documents provided by Mr. Leffler to support his claim for attorney's fees, are the following: (1) the sworn (and unchallenged) assertion that his hourly rate was found to be reasonable in a case recently decided in the U.S Bankruptcy Court for the Eastern District of Virginia by Judge Phillips; and (2) the Declaration of L. Lee Byrd, Esq., filed in an unrelated case in the U.S. Bankruptcy Court for the Eastern District of Virginia, stating that Mr. Leffler's hourly rate is reasonable. Mr. Leffler has been a frequent lecturer to the bar on bankruptcy related matters, and he has been recognized for legal excellence. The record supports the reasonableness of Mr. Leffler's hourly rate.

Ms. Kennedy, who entered the practice of law in 2012, claims an hourly rate of $350.00. Her hourly rate was challenged in a recent proceeding before Judge Phillips in the U.S. Bankruptcy Court for the Eastern District of Virginia where he found it to be reasonable. Ms. Kennedy claims that her "time was valuable and necessary to this case due to [h]er extensive experience with the Bankruptcy Court and knowledge of bankruptcy law." *See* <u>Declaration Of Emily Connor Kennedy In Support Of Request For Attorney's Fees,</u> paragraph 10. While Ms. Kennedy has less practice experience as compared to the other attorneys representing the plaintiff, her qualifications are none the less formidable. Ms. Kennedy has limited her practice exclusively to the representation of consumers, especially consumer debtors in bankruptcy. She has authored several articles on bankruptcy law and she has given three continuing legal education lectures on bankruptcy topic. She has been involved in the handling of several reported bankruptcy cases. Ms. Kennedy's hourly rate is reasonable.

For the reasons expressed above, I find that the hourly rates identified by plaintiff's counsel are reasonable. This finding completes the analysis of the first factor in the calculation of the "lodestar amount" in this matter.

## Step One - The Reasonableness of Time Expended

Pursuant to the first step in the *McAfee* analysis, a second factor must also be determined: whether the total number of hours claimed by plaintiffs counsel are reasonable.

Plaintiff seeks approval of the time spent by three law firms, four attorneys, and two paralegals. Plaintiff claims a total of 244.6 hours of attorney time and 3.2 hours of paralegal time. The breakdown is as follows: Mr. Leffler (109.9 hours); Ms. Kennedy (34.8 hours); Mr. Domonoske (78.8 hours); and Mr. Pittman (21.1 hours).

Among the *Johnson* factors bearing on the calculation of the *number of hours reasonably expended* are as follows: Factor 1 (time and labor expended); Factor 2 (novelty and difficulty of question raised); and Factor 7 (time limitations imposed by the client or circumstances.)

Plaintiffs case is straightforward matter involving defendant's violation of the bankruptcy court's automatic stay as a result of defendant's post-stay debiting of plaintiffs bank account. The debited sum was approximately $150.00. This matter does not appear to present novel or difficult questions of law, which implicates one of the *Johnson* factors.

Despite the apparent lack of novelty and difficulty in plaintiffs case, its significance should not be overlooked. Mr. Leffler and Ms. Kennedy and their firm, The Boleman Law Firm, undertook to represent plaintiff in an uncomplicated bankruptcy that blossomed into a much larger matter in July, 2017, after defendant withdrew money from plaintiff's bank account in violation of the stay in bankruptcy. They found themselves in litigation involving seven actions against sister entities to the defendant, and as a consequence, they became "increasingly alarmed by the systematic abuse [these entities] were demonstrating against debtors represented by the Boleman Law Firm." *See* Response To CashNet's Opposition To Application For Award Of Attorneys' Fees And Reimbursement Of Expenses, page 2. When this significance became apparent, Boleman brought in specialists, including Mr. Domonsoke and Mr. Pittman, both of whom made time entries for the first time in February, 2017.

Defendant's recalcitrance in refusing to refund the sum debited in violation of the automatic stay for nearly six months, from August to December, was egregious and remarkably abusive. Defendant's obtuse behavior undoubtedly complicated this matter and forced the expenditure of additional time on this case. Defendant's stalling tactics during settlement discussions related to reaching agreement on changes to defendant's business practices also caused costly delays.

11

Applying the *Johnson* factor related to time and labor expended, and based on my review of the time sheets in the record, I find substantial evidence of duplication in time and effort. Extraordinary amount of attorney time was devoted to the prosecution of the interests of the plaintiff in connection with this obvious violation, especially when the amount debited from the debtor's bank account after the bankruptcy court entered the stay was approximately $150.00.

Plaintiff offers a justification for the reasonableness of the number of hours spent in this matter by asserting that her attorneys were careful in the coordination as between counsel. This justification can best be summed up by the following statement, made by Mr. Pittman: "In this case, debtors' counsel divided up tasks between the various counsel to capitalize on the strength of the individual team members and to avoid unnecessary duplicity [sic] of work, a working arrangement that we have developed over the past two years in a number of consumer protection cases litigated by this Court." *See* Declaration of Dale W. Pittman In Support Of Debtor's Motion For Attorneys' Fees, paragraph 7.

I have reviewed the individual time records provided by counsel, and I have considered the various entries contained in them. I have noted significant duplication of effort in the way in which the individual attorneys conferred and communicated, as well as in the way they contributed through research and drafting, to the prosecution of plaintiffs case. I have also considered the roles played by the attorneys whose time is under consideration, and whether resort to their skill and expertise was warranted to the degree apparent in their time records.

I find that the *Perdue* presumption, however strong, has been rebutted on this record, and that the total hours of attorney time is excessive. I find that a reduction in the number of hours to be used in calculating the reasonable number of hours expended is appropriate.

For the Boleman Law Firm, a lodestar amount for Ms. Kennedy and Mr. Leffler must be calculated.

For Ms. Kennedy, a reduction in attorney's time of 50 percent, or to 16.9 hours at $350.00 and 5 hours at $325.00 is reasonable. Applying these hours to Ms. Kennedy's hourly rates of $325.00 and $350.00, I find that the sum in fees of $5,255.00 is the appropriate lodestar amount.

For Mr. Leffler, a reduction in attorney's time of 50 percent, or to 5.05 hours at $425.00 per hour, and to 49.85 hours at $435.00 per hour, is reasonable. Applying these hours to Mr. Leffler's hourly rates of $425.00 and $435.00, respectively, I find that the sum in fees of $23,831.00 is the appropriate lodestar amount.

For the Law Office of Dale W. Pittman, a reduction of 50 percent, to 10.55 hours, is reasonable. Applying these hours to Mr. Pittman's reasonable hourly rate of $550.00, I find the sum in fees of $5,802.50 to be the appropriate lodestar amount.

For Consumer Litigation Associates, a reduction of 50 percent, to 39.4 hours, is reasonable. Applying these hours to Mr. Domonoske's hourly rate of $550.00, I find the sum in fees of $21,670.00 to be the appropriate lodestar amount.

Having calculated the total number of hours and total hourly rates as above, I find the lodestar in this matter to be $50,558.50.

## Step Two

A deduction based on an assessment of unsuccessful claims unrelated to successful ones, as required by *McAfee,* is not warranted here. Plaintiff and defendant agreed to settle their differences prior to trial and, as a consequence, the bankruptcy court has not made a judicial determination with respect to plaintiff's claims. In the absence of a judicial determination of plaintiff's success on individual claims, I will rely on the defendant's concession that a step two deduction is not warranted. *See* CNU Of Kansas, LLC'S Objection To Application By Counsel For Plaintiff For Award Of Attorneys' Fees, page 9.

Accordingly, I find that a step two deduction should not be made in the calculation of the attorneys' fee award to be made to plaintiffs counsel.

## Step Three

At step three of the *McAfee* process, some percentage of the remaining amount should be awarded, depending on the degree of success enjoyed by the plaintiff. Additional *Johnson* factors are appropriate for consideration at this point in the necessary analysis: (8) amount in controversy; (10) undesirability of case within the legal community; (11) nature and length of professional relationship between attorney and client; and (12) attorneys fees in similar cases.

The settlement agreement reached by the parties in this matter weighs heavily in the determination as to the degree of success enjoyed by the plaintiff. The agreement sets out a compromise pursuant to which both plaintiff and defendant benefitted by avoiding uncertainty of outcome at trial, as well as the costs and expenses of preparing for and trying this case.

Additional terms include the following: plaintiff gave up her claim for punitive damages in return for a payment of $5,000.00 in compensatory damages by defendant, and defendant agreed to change certain of the business practices which caused harm to the plaintiff. The agreed changes to defendant's business practices make future violations of the bankruptcy court's automatic stay less likely, benefitting both future debtors and the bankruptcy court.

Finally, an essential term of the settlement included the agreement of plaintiff and defendant to submit the plaintiffs claim for attorneys' fees to arbitration. In addition to the other aspects of the settlement benefiting the plaintiff, this term of the settlement

agreement necessarily implies that plaintiff was largely successful in prosecuting her case against the defendant.

Defendant points out trial results in substantially similar cases involving a business entity related to the defendant. In three companion cases that were tried together in the U.S. Bankruptcy Court for the Eastern District of Virginia, *Charity, Edmonds,* and *Lane,* the damages awarded were $60,195.05, $59,426.53, and $58,550.34, respectively. These awards included actual damages, punitive damages, and attorneys' fees. In the case at hand, the parties agreed to settle their differences before full blown discovery was taken, and the parties were spared the expense of trial preparation.

Defendant also points to other substantially similar cases involving this defendant and various plaintiffs, identified as *Fudala, Johnson, Munoz,* and *Smith.* Defendant advises that these cases were settled prior to trial. The record reveals that the average award of attorneys' fees in these four cases amounts to $11,743.90.

The settlement reached in connection with the plaintiffs claims did far more than provide plaintiff with monetary relief in the form of a payment of $5,000. As a result of plaintiffs success, she was able to obtain a significant change in certain of the business policies and practices of the defendant, not only insuring that defendant will be less likely to violate a bankruptcy court's automatic stay in future cases, but also protecting future debtors from having their bank accounts raided by the defendant in disregard of bankruptcy law. Obviously, the settlement in this case helped put an end to defendant's apparent systematic violation of the bankruptcy court's automatic stay and represented a victory of significant proportions.

It is clear from the record that the work of representing debtors in cases of this kind is disfavored. Special skills are required, including specialized knowledge of bankruptcy practice and procedures and federal and state statutes enacted to provide protection to debtors. Thus, a team approach, with lawyers representing different areas of practice, was necessary to plaintiffs success in this matter. A strong commitment to serving individuals in financial distress, despite scant likelihood of payment, is the hallmark of debtor's counsel. The step three analysis called for in *McAfee* is obviously intended to reward this commitment.

Defendant argues for a downward adjustment of the award of attorneys' fees in this matter, claiming that plaintiff achieved only limited success. However, plaintiffs success must be measured not only by her recovery of $5,000.00 in a matter involving a financial loss of approximately $150.00, but also by her achievement in forcing defendant to change its bankru ptcy refund procedures.

After considering the terms of the settlement a g'eement reached by the parties, the applicable *Johnson* factors, and the record before me, I find that the defendant is not entitled to a downward adjustment of the attorneys' fee award.

I further find that the plaintiff is entitled to an increase in the amount of attorneys' fees of ten percent based the degree of success she enjoyed in this matter, or $5.658.85.

Consequently, the final award is in the amount of $62,257.35.

Respectfully submitted,

/s/ FBS

Hon. F. Bradford Stillman (Ret.)

Salina Willis                                                      Apr 29, 2019
1615 BickerstaffRoad
Richmond, VA 23231                                          **EXHIBIT C**

                                              File #:        190007
Attention:                                    Inv#:          Sample

RE:   Salina Willis v. BCC Financial Management Services, Inc. (Boleman case)

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Mar-07-19 | Prepare draft complaint. Online research for corporate information. | 0.70 | 140.00 | KGP |
| Mar-12-19 | Prepare attorney compensation form and efile same with the bankruptcy court. | 0.20 | 40.00 | KGP |
| Mar-25-19 | Begin review of draft Complaint | 2.20 | 1,210.00 | DWP |
|  | Proof and edit complaint. | 0.50 | 100.00 | KGP |
| Mar-26-19 | Complete text of draft Complaint for review by Mark Leffler at this time | 2.10 | 1,155.00 | DWP |
|  | Phone from Mark Leffler to discuss the remaining process vis a vis the Bankruptcy Court prior to filing the Complaint in the District Court | 0.10 | 55.00 | DWP |
|  | Proof and edit draft complaint. | 0.40 | 80.00 | KGP |
| Mar-27-19 | Phone from Mark Leffler to discuss his appearance before Judge Heunnekins today, and filing the Complaint | 0.20 | 110.00 | DWP |
|  | Review file, prepare draft settlement demand letter an proposed release and settlement agreement to Florida lawyer Bruce Goldman | 0.90 | 495.00 | DWP |
|  | Review and respond to email from Bruce Goldman. PH one to Mark Leffler to discuss settlement at this time. | 0.30 | 165.00 | DWP |
|  | Review and edit draft Notice of Settlement. Phone to Robin Belcher to advise of the settlement of this case. | 0.20 | 110.00 | DWP |
| Mar-29-19 | Email exchanges with counsel regarding filing of complaint. Efile complaint with the court and edit documents to include case no. | 0.40 | 80.00 | KGP |
| Apr-01-19 | Review service papers to go out now to serve the defendant. | 0.10 | 55.00 | DWP |
| Apr-09-19 | Phone from Florida attorney Bruce Goldman to advise that he represents BCC and to request a settlement demand. | 0.20 | 110.00 | DWP |
|  | Review Return of Service, diary Defendant's Answer due date. | 0.10 | 55.00 | DWP |

| Date | Description | Hours | Amount | Initials |
|------|-------------|-------|--------|----------|
| Apr-11-19 | Review Bruce Goldman's emailed counter, review same by phone with Mark Leffler, revise release, email reply with counter to Bruce Goldman | 0.60 | 330.00 | DWP |
| Apr-16-19 | Reply to Bruce Goldman's settlement negotiations related email. | 0.10 | 55.00 | DWP |
| Apr-18-19 | Review and send executed release to Bruce Goldman. | 0.10 | 55.00 | DWP |
| Apr-23-19 | Prepare draft notice of settlement. | 0.10 | 20.00 | KGP |
| Apr-29-19 | Review and complete draft Declaration in support of my fee approval request to the Bankruptcy Court | 0.30 | 165.00 | DWP |
| | Format draft of Pittman fee declaration. | 0.20 | 40.00 | KGP |
| | Totals | 10.00 | $4,625.00 | |

**FEE SUMMARY:**

| Lawyer | Hours | Effective Rate | Amount |
|--------|-------|----------------|--------|
| Dale W. Pittman | 7.50 | $550.00 | $4,125.00 |
| Karen Graham, Paralegal | 2.50 | $200.00 | $500.00 |

| **DISBURSEMENTS** | | **Disbursements** | **Receipts** |
|-------------------|--|-------------------|--------------|
| Mar-29-19 | filing fee | 400.00 | |
| Apr-01-19 | photocopies | 3.50 | |
| | postage | 1.45 | |
| Apr-23-19 | process service | 13.00 | |
| | Totals | $417.95 | $0.00 |

| | |
|--|--|
| **Total Fees, Disbursements** | **$5,042.95** |
| Previous Balance | $0.00 |
| Previous Payments | $0.00 |
| **Balance Due Now** | **$5,042.95** |
| **AMOUNT QUOTED:** | **$0.00** |